******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

COMMISSION ON HUMAN RIGHTS
AND OPPORTUNITIES *v.* ECHO
HOSE AMBULANCE ET AL.
(SC 19496)

Rogers, C. J., and Palmer, Zarella, Eveleigh, McDonald, Espinosa and
Robinson, Js.*

*Argued March 30—officially released July 26, 2016*

*Christopher T. Parkin*, with whom, on the brief, were
*Russell J. Sweeting* and *Thomas W. Moyher*, for the
appellant (defendant Sarah Puryear).

*Ian Angus Cole*, for the appellee (named defendant).

*Michael J. Rose*, with whom, on the brief, was *Cindy
M. Cieslak*, for the appellee (defendant city of Shelton).

*Opinion*

McDONALD, J. We are called upon to decide what test should be applied to determine whether an unpaid volunteer is an "employee" for purposes of the Connecticut Fair Employment Practices Act (CFEPA), General Statutes § 46a-51 et seq. More specifically, we must decide whether a volunteer must satisfy the predominant "remuneration test" used to resolve similar federal causes of action or Connecticut's common-law "right to control" test.

This certified appeal arises out of a complaint filed with the plaintiff, the Commission on Human Rights and Opportunities, by Brenda Puryear (Brenda), on behalf of her then minor daughter Sarah Puryear (Sarah).[1] The complaint alleged that the defendants, Echo Hose Ambulance and the city of Shelton, had discriminated and retaliated against Sarah on the basis of her race and color in violation of CFEPA and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (Title VII). The trial court rendered judgment dismissing the commission's administrative appeal from the decision of the commission's human rights referee, who had struck the complaint on the ground that Sarah was not an employee under the remuneration test. The Appellate Court affirmed the trial court's judgment; *Commission on Human Rights & Opportunities* v. *Echo Hose Ambulance*, 156 Conn. App. 239, 253, 113 A.3d 463 (2015); and Sarah appealed to this court. We affirm the judgment of the Appellate Court.

The record reveals the following facts, as alleged in the complaint, and procedural history. Echo Hose provides ambulance transport and other services to the city. Sarah, who is African-American, was accepted into a "precepting program"[2] with Echo Hose, which required her to ride in an ambulance for one shift each week and to participate in other activities. While taking part in that program, and after completing it, Sarah "was treated differently due to her race and color and . . . was subject to discipline that other individuals . . . were not." Specifically, Sarah was subjected to comments about Africa and the " 'ghetto,' " was suspended without good cause, and was terminated without good cause. Although Sarah's termination was later overruled, such that she was able to complete the precepting program, members of Echo Hose voted against making Sarah a member.

Brenda thereafter filed a complaint with the commission alleging violations of CFEPA and Title VII. The complaint did not allege that Sarah had been paid or had received other benefits in conjunction with her activities with Echo Hose. The city moved to strike the complaint, claiming that Sarah was not an "employee," a factual predicate to an action under either CFEPA or Title VII, because she could not satisfy the remuneration

test that determines such a status. Brenda objected to the motion, claiming that the proper test for determining who is an employee under CFEPA is the "right to control test," which Sarah satisfied. The referee determined that the remuneration test applied to both Title VII and CFEPA and that Sarah could not satisfy that test. The referee therefore struck the complaint in its entirety.

After the referee declined to rule on motions for reconsideration filed by the commission and Sarah regarding Sarah's claim under CFEPA, the commission brought this administrative appeal pursuant to General Statutes §§ 4-183 and 46a-94a. See footnote 1 of this opinion. The trial court concluded that the referee properly had applied the remuneration test and dismissed the appeal.

Sarah then appealed to the Appellate Court, which affirmed the judgment of dismissal. *Commission on Human Rights & Opportunities* v. *Echo Hose Ambulance*, supra, 156 Conn. App. 253. We granted Sarah's petition for certification to appeal limited to the following issue: "Did the Appellate Court properly apply the federal 'remuneration test' rather than Connecticut's common-law 'right [to] control' test to determine an 'employee' under [CFEPA] . . . ?" *Commission on Human Rights & Opportunities* v. *Echo Hose Ambulance*, 317 Conn. 911, 116 A.3d 309 (2015).

We apply plenary review to this question of law, and well established principles of statutory construction.[3] See General Statutes § 1-2z (setting forth plain meaning rule); *Caciopoli* v. *Lebowitz*, 309 Conn. 62, 69, 68 A.3d 1150 (2013) ("[w]hen a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common-law principles governing the same general subject matter" [internal quotation marks omitted]).

CFEPA defines an employee as "any person employed by an employer . . . ." General Statutes § 46a-51 (9). This circular definition provides no guidance on how to assess whether someone is an employee. Cf. *Daggitt* v. *United Food & Commercial Workers International Union*, 245 F.3d 981, 987 (8th Cir. 2001) (finding substantively identical definition of employee in Title VII circular and unhelpful in court's inquiry).

"This court previously has recognized that in construing [CFEPA] we are properly guided by the case law surrounding federal fair employment legislation . . . ." (Internal quotation marks omitted.) *Perodeau* v. *Hartford*, 259 Conn. 729, 738, 792 A.2d 752 (2002); see also *Patino* v. *Birken Mfg. Co.*, 304 Conn. 679, 689, 41 A.3d 1013 (2012) ("Connecticut antidiscrimination statutes

should be interpreted in accordance with federal anti-discrimination laws" [internal quotation marks omitted]). We also have recognized that our legislature's intent, in general, was to make CFEPA complement the provisions of Title VII. *Williams* v. *Commission on Human Rights & Opportunities*, 257 Conn. 258, 287, 777 A.2d 645 (2001); *State* v. *Commission on Human Rights & Opportunities*, 211 Conn. 464, 469–70, 559 A.2d 1120 (1989). We therefore previously looked to Title VII jurisprudence for guidance when interpreting the meaning of "employer" under CFEPA. See *Perodeau* v. *Hartford*, supra, 738–41.

Two tests—the right to control test and the remuneration test—have emerged from the federal courts to determine whether an individual is an employee in the context of the substantively identical definition of that term under Title VII. 42 U.S.C. § 2000e (f). The right to control test is based on the common law of agency, which considers various factors to determine "the *hiring party's* right to control the manner and means by which the product is accomplished [by the hired party]."[4] (Emphasis added.) *Community for Creative Non-Violence* v. *Reid*, 490 U.S. 730, 751–52, 109 S. Ct. 2166, 104 L. Ed. 2d 811 (1989). The United States Supreme Court has applied this test to various statutory schemes, not including Title VII, to resolve the question of whether the hired party was an employee or independent contractor. *Nationwide Mutual Ins. Co.* v. *Darden*, 503 U.S. 318, 323, 327, 112 S. Ct. 1344, 117 L. Ed. 2d 581 (1992); *Community for Creative Non-Violence* v. *Reid*, supra, 751–52; see also *O'Connor* v. *Davis*, 126 F.3d 112, 115 (citing cases), cert. denied, 522 U.S. 1114, 118 S. Ct. 1048, 140 L. Ed. 2d 112 (1998). The court relied on the well established rule that, "when Congress uses the term employee without defining it with precision, courts should presume that Congress had in mind the conventional master-servant relationship as understood by the common-law agency doctrine." (Internal quotation marks omitted.) *O'Connor* v. *Davis*, supra, 115, quoting *Nationwide Mutual Ins. Co.* v. *Darden*, supra, 322–23, and *Community for Creative Non-Violence* v. *Reid*, supra, 739–40.

The remuneration test arose to address circumstances in which, in contrast to the employee versus independent contractor situation, it was not clear that the putative employee had been "hired" in the first instance, and accordingly, approximated the conventional master-servant relationship. *O'Connor* v. *Davis*, supra, 126 F.3d 115. The remuneration test instructs courts to "conduct a [two step] inquiry by requiring that a volunteer first show remuneration as a threshold matter before proceeding to the second step—analyzing the putative employment relationship under the [common-law] agency test. Remuneration may consist of either direct compensation, such as a salary or wages, or indirect benefits that are not merely incidental to

the activity performed." *Juino* v. *Livingston Parish Fire District No. 5*, 717 F.3d 431, 435 (5th Cir. 2013).

A majority of United States Courts of Appeals that have considered this issue have adopted the remuneration test. See id., 435–38 (adopting remuneration test after contrasting cases from circuits that apply remuneration test, including Second, Fourth, Eighth, Tenth, and Eleventh Circuits, with cases from Sixth and Ninth Circuits, which apply common-law agency test).[5] In so doing, several circuits, including the Second Circuit, concluded that a test designed to distinguish employees from independent contractors is ill-suited to distinguishing employees from volunteers. See *O'Connor* v. *Davis*, supra, 126 F.3d 115; *Haavistola* v. *Community Fire Co. of Rising Sun, Inc.*, 6 F.3d 211, 220 (4th Cir. 1993).

Federal case law strongly weighs in favor of the application of the remuneration test to claims brought under CFEPA for two reasons. First, adopting the remuneration test makes this court's interpretation of CFEPA complement the interpretation of Title VII as adopted by the majority of federal circuits, including the Second Circuit. See *Gleason* v. *Smolinski*, 319 Conn. 394, 444 n.41, 125 A.3d 920 (2015) (decisions of Second Circuit are deemed particularly persuasive when there is circuit split). Although this court has occasionally interpreted CFEPA differently than Title VII, it has done so only in circumstances in which there is clear evidence of a contrary legislative intent. See *McWeeny* v. *Hartford*, 287 Conn. 56, 69, 946 A.2d 862 (2008) (relevant portion of CFEPA plain and unambiguous); *Evening Sentinel* v. *National Organization for Women*, 168 Conn. 26, 34 n.5, 357 A.2d 498 (1975) (textual difference between CFEPA and corresponding provision of Title VII was "purposeful and is meaningful"); see also *Vollemans* v. *Wallingford*, 103 Conn. App. 188, 213, 218, 928 A.2d 586 (2007) (federal interpretation directly conflicted with specific legislative policy of avoiding dismissal of potentially meritorious claims due to late filing), aff'd, 289 Conn. 57, 61, 956 A.2d 579 (2008). No such evidence is apparent in the present case.

Second, the logic supporting the remuneration test is more sound. It provides a threshold step to resolve the factual premise that the right to control test assumes—a hiring party and a hired party.

Our conclusion that the remuneration test applies is confirmed by the legislature's enactment of "An Act Protecting Interns from Workplace Harassment and Discrimination." Public Acts 2015, No. 15-56 (P.A. 15-56), codified at General Statutes (Supp. 2016) §§ 31-40y and 46a-51 (8). The bill subsequently enacted as P.A. 15-56 was introduced prior to the Appellate Court's decision in the present case but was not enacted until shortly after that decision was issued. The legislature, through P.A. 15-56, amended CFEPA to include interns

as a separate class of persons to whom the protections of CFEPA applied. General Statutes (Supp. 2016) § 46a-51 (8). An " '[i]ntern' " is defined in part as "an individual who . . . is not entitled to wages for the work performed"; General Statutes (Supp. 2016) § 31-40y (a) (3) (B); in contrast to an " '[e]mployee,' " which is defined as "any individual engaged in service to an employer in a business of such employer and receives compensation for such service . . . ."[6] General Statutes (Supp. 2016) § 31-40y (a) (1). In testimony before the Labor and Public Employees Committee prior to the Appellate Court's decision in this case, Senator Martin M. Looney, one of the sponsors of the bill enacted as P.A. 15-56, explained to his colleagues that the need for the bill stemmed from the fact that "Connecticut does not currently protect interns from harassment, discrimination, or retaliation in our statutes because they are not considered to be employees under our state law." Conn. Joint Standing Committee Hearings, Labor and Public Employees, Pt. 1, 2015 Sess., p. 164.

Public Act 15-56 and its legislative history yield the following considerations. First, the legislature did not hold the view that the right to control test applied to CFEPA because, if that test had applied, interns would not have been categorically excluded from CFEPA. Second, adopting the right to control test for CFEPA would create tension between CFEPA and P.A. 15-56, the latter plainly turning on the question of compensation and other factors not directly related to the right to control. Creating such tension would be inconsistent with the principle that we read "the legislative scheme as a whole in order to give effect to and harmonize all of [its] parts." (Internal quotation marks omitted.) *Stewart* v. *Watertown*, 303 Conn. 699, 711, 38 A.3d 72 (2012).

Sarah nevertheless advances a number of arguments for application of the right to control test, none of which we find persuasive. Sarah's reliance on two cases involving complaints by volunteers, *Groton* v. *Commission on Human Rights & Opportunities*, 169 Conn. 89, 91, 100–101, 362 A.2d 1359 (1975), and *Quinnipiac Council, Boy Scouts of America, Inc.* v. *Commission on Human Rights & Opportunities*, 204 Conn. 287, 302, 528 A.2d 352 (1987), is misplaced. Because neither case directly addressed or analyzed the question of who is an employee under CFEPA, we read them as simply assuming, without deciding, that volunteers *could be* protected under CFEPA, a proposition that we do not dispute.

Sarah's contention that, by enacting P.A. 15-56, the legislature clarified the law to protect individuals in her position, is unsupported by its plain language. Public Act 15-56 expands protections for one narrowly defined class of persons—unpaid interns—to which Sarah does not belong.

Sarah's argument that applying the remuneration test

would lead to unfair results, contrary to the public policy of protecting workers from discrimination, is similarly unpersuasive. Although CFEPA is a remedial statute, such "that ambiguities in [CFEPA] should be construed in favor of persons seeking redress thereunder"; *McWeeny* v. *Hartford*, supra, 287 Conn. 70; our "fundamental objective is to ascertain and give effect to the apparent intent of the legislature." (Internal quotation marks omitted.) *Standard Oil of Connecticut, Inc.* v. *Administrator, Unemployment Compensation Act*, 320 Conn. 611, 642, 134 A.3d 581 (2016). Accordingly, we are "not free to accomplish a result that is contrary to the intent of the legislature . . . ." (Internal quotation marks omitted.) *McWeeny* v. *Hartford*, supra, 70. For all the reasons previously discussed, we are persuaded that the application of the remuneration test would be its intention. Moreover, the legislature's use of the term "employee" instead of a more general term; cf. General Statutes § 53-450 (b) ("[a]ny person . . . shall have a right of action against any person"); is itself an expression of public policy to impose some limit on the scope of CFEPA. *Thibodeau* v. *Design Group One Architects, LLC*, 260 Conn. 691, 713, 802 A.2d 731 (2002) (general public policy against sex discrimination could not trump specific expression of policy in CFEPA exempting small employers).

In sum, the Appellate Court properly concluded that the remuneration test is the appropriate test for determining whether a volunteer is an employee under CFEPA. Although a volunteer may be able to meet the remuneration test by proof of benefits in lieu of wages; *Haavistola* v. *Community Fire Co. of Rising Sun, Inc.*, supra, 6 F.3d 221–22; Sarah has neither alleged facts nor claimed on appeal that she can meet this test. Accordingly, our conclusion that the remuneration test applies is dispositive.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.

* This case originally was scheduled to be argued before a panel of this court consisting of Chief Justice Rogers and Justices Palmer, Zarella, Eveleigh, McDonald, Espinosa and Robinson. Although Justice Eveleigh was not present when the case was argued before the court, he has read the briefs and appendices, and listened to a recording of the oral argument prior to participating in this decision.

[1] Due to unusual procedures applicable to proceedings before the commission, in this administrative appeal, the commission is named as both a plaintiff (in its own capacity) and as a defendant (in its capacity as the agency under which the commission's human rights referee issued the decision from which the commission appealed). See General Statutes § 46a-94a. Sarah, who was substituted for her mother as a party upon reaching the age of majority, is named as a nominal defendant pursuant to General Statutes § 4-183 (c). For clarity, we refer to the commission and Sarah by name.

[2] It appears from the record that the precepting program is a probationary training program that, if satisfactorily completed, allows the participant to become a regular member of Echo Hose upon a majority vote of all of the regular members.

[3] Although we ordinarily afford "deference to the construction of a statute applied by the administrative agency empowered by law to carry out the statute's purposes," such deference is unwarranted when, as in this case, "the construction of a statute . . . has not previously been subjected to

judicial scrutiny [or to] . . . a governmental agency's time-tested interpretation . . . ." *Chairperson, Connecticut Medical Examining Board* v. *Freedom of Information Commission*, 310 Conn. 276, 281–82, 77 A.3d 121 (2013).

[4] Connecticut's right to control test similarly determines the relationship between a worker and a putative employer "by asking whether the putative employer has the right to control the means and methods used by the worker in the performance of his or her job." (Internal quotation marks omitted.) *Doe* v. *Yale University*, 252 Conn. 641, 680–81, 748 A.2d 834 (2000). This court has not expressly endorsed the factors used by the federal courts, which include: "the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party." (Footnotes omitted.) *Community for Creative Non-Violence* v. *Reid*, 490 U.S. 730, 751–52, 109 S. Ct. 2166, 104 L. Ed. 2d 811 (1989).

[5] Two other circuit courts have applied the common-law test for agency to determine whether an individual was an employee under Title VII, but there was no question that the individual had been hired by the employer. See *Brown* v. *J. Kaz, Inc.*, 581 F.3d 175, 178, 180 (3d Cir. 2009); *Alberty-Velez* v. *Corporacion de Puerto Rico Para La Difusion Publica*, 361 F.3d 1, 6–7 (1st Cir. 2004).

[6] The definition of intern also provides that an intern is an individual whose work "supplements training given in an educational environment"; General Statutes (Supp. 2016) § 31-40y (a) (3) (C) (i); therefore making clear that an intern is not the same as a volunteer whose efforts are unconnected to an educational program.