******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

PALMER, J., with whom McDONALD, J., joins, dissenting. I respectfully disagree with the majority's conclusion that General Statutes § 46a-104[1] does not authorize an award of statutory punitive damages as a remedy for discriminatory practices under the Connecticut Fair Employment Practices Act (act), General Statutes § 46a-51 et seq. Guided by the well established principles under which we construe the act, including affording it a liberal construction in favor of employees and reading it consistently with federal employment discrimination laws, in particular, Title VII of the Civil Rights Act of 1964, as amended by Title VII of the Civil Rights Act of 1991, 42 U.S.C. § 2000e et seq. (2012), I believe that reading § 46a-104 to authorize punitive damages in appropriate cases is the better construction because it would further the purposes of the act by deterring particularly severe cases of discriminatory conduct in the workplace. Moreover, those portions of this court's decision in *Ames* v. *Commissioner of Motor Vehicles*, 267 Conn. 524, 839 A.2d 1250 (2004), on which the majority relies in concluding that § 46a-104 does not authorize a punitive damages award, are dicta that I now believe were incorrect. I therefore would reverse the judgment of the Appellate Court upholding the trial court's decision to set aside the jury's award of statutory punitive damages in the amount of $500,000 to the plaintiff, Michael Tomick. See *Tomick* v. *United Parcel Service, Inc.*, 157 Conn. App. 312, 341, 115 A.3d 1143 (2015). Accordingly, I respectfully dissent.[2]

I agree with the majority's statement of the background facts and procedural history of this case. I also agree with the majority that, in determining whether § 46a-104 authorizes an award of punitive damages, "[w]e apply plenary review to this question of law, and well established principles of statutory construction" under General Statutes § 1-2z. *Commission on Human Rights & Opportunities* v. *Echo Hose Ambulance*, 322 Conn. 154, 159, 140 A.3d 190 (2016). I turn first to the statutory text, as § 1-2z requires. Section 46a-104 provides: "The court may grant a complainant in an action brought in accordance with section 46a-100 such *legal and equitable relief* which it deems appropriate including, but not limited to, temporary or permanent injunctive relief, attorney's fees and court costs. The amount of attorney's fees allowed shall not be contingent upon the amount of damages requested by or awarded to the complainant." (Emphasis added.) The majority correctly concludes that § 46a-104 is ambiguous when read in context, thus permitting resort to extratextual evidence to determine whether it authorizes punitive damages. Unlike the majority, however, I conclude that the "legal . . . relief" authorized by § 46a-104 can include punitive damages.

As the majority acknowledges, at least as a starting point, the term "legal relief" means damages, and, in the absence of further qualification or evidence of a contrary legislative intent, has been "commonly understood to include compensatory and punitive damages." *Travis* v. *Gary Community Mental Health Center, Inc.*, 921 F.2d 108, 111 (7th Cir. 1990), cert. denied, 502 U.S. 812, 112 S. Ct. 60, 116 L. Ed. 2d 36 (1991); see also id., 111–12 (considering intentional nature of retaliatory discharge and holding that punitive damages are available under Fair Labor Standards Act, 29 U.S.C. § 216 [b] [1988], which provides for "such legal or equitable relief as may be appropriate to effectuate the purposes of [the antiretaliation provision of 29 U.S.C. § 215 (a) (3) (1988)], including without limitation employment, reinstatement or promotion and the payment of wages lost and an additional equal amount as liquidated damages" [internal quotation marks omitted]); *Greathouse* v. *JHS Security, Inc.*, United States District Court, Docket No. 11-CV-7845 (PAE) (GWG) (S.D.N.Y. November 13, 2015) (concluding that punitive damages are available under antiretaliatory provision of federal Fair Labor Standards Act); *Jones* v. *Amerihealth Caritas*, 95 F. Supp. 3d 807, 818 (E.D. Pa. 2015) (same); *Haynes* v. *Rhone-Poulenc, Inc.*, 206 W. Va. 18, 31–35, 521 S.E.2d 331 (1999) (phrase "legal . . . relief" in West Virginia Human Rights Act authorizes punitive damages); cf. *Harris* v. *Richards Mfg. Co.*, 675 F.2d 811, 814 (6th Cir. 1982) (civil rights statute authorizing "actual and punitive damages" gives rise to claim for "legal relief" creating right to jury trial under seventh amendment); but see *Snapp* v. *Unlimited Concepts, Inc.*, 208 F.3d 928, 934–36 (11th Cir. 2000) (observing that " '[l]egal relief' is certainly a broad formulation" but disagreeing with Seventh Circuit's decision in *Travis* on basis of other language in Fair Labor Standards Act, which it viewed as representative of Congress' intent that damages be compensatory, including liquidated damages provision), cert. denied, 532 U.S. 975, 121 S. Ct. 1609, 149 L. Ed. 2d 474 (2001).

The majority also acknowledges that the legislature's use of the phrase "including, but not limited to," which precedes the list of remedies in § 46a-104, reflects an intent to be expansive with respect to the judicial relief available for employment discrimination. This is because the "word 'includes' is a term of expansion," and the "phrase 'but shall not be limited to,' when 'coupled with the enumeration of specific or illustrative acts of . . . conduct,' " evinces the legislature's intent that the statute include "a wide range" of remedial options, with those listed in the statute being illustrative rather than exclusive. *Scholastic Book Clubs, Inc.* v. *Commissioner of Revenue Services*, 304 Conn. 204, 215, 38 A.3d 1183, cert. denied,      U.S.     , 133 S. Ct. 425, 184 L. Ed. 2d 255 (2012); see also, e.g., *State* v. *Jones*, 51 Conn. App. 126, 137–38, 721 A.2d 903 (1998) (definition of

drug paraphernalia in General Statutes [Rev. to 1995] § 21a-240 [20] [A], which used phrases " 'such as' and 'including, but not limited to,' " indicated legislature's "clear intention that the items listed in the definition do not constitute an exhaustive or exclusive list," meaning that listing of "pipe with a screen" did not evince legislative intent "that a possessor of a marijuana pipe be able to escape liability by merely removing a screen, which does not apparently effect its use in any way"), cert. denied, 247 Conn. 958, 723 A.2d 814 (1999).

Particularly illustrative of the breadth we attribute to this language is *Commission on Human Rights & Opportunities* v. *Board of Education*, 270 Conn. 665, 855 A.2d 212 (2004), in which this court considered whether General Statutes (Rev. to 1997) § 46a-86 (c) authorized the Commission on Human Rights and Opportunities (commission) to award "personal compensatory damages," such as for emotional distress, caused by a public school district's act of discriminating against a student on the basis of his race in violation of General Statutes (Rev. to 1997) § 46a-58 (a). Id., 685–86. General Statutes (Rev. to 1997) § 46a-86 (c) provides: "In addition to any other action taken hereunder, upon a finding of a discriminatory practice prohibited by section 46a-58, 46a-59, 46a-64, 46a-64c, 46a-81b, 46a-81d or 46a-81e, the presiding officer shall determine the damage suffered by the complainant, *which damage shall include, but not be limited to*, the expense incurred by the complainant for obtaining alternate housing or space, storage of goods and effects, moving costs and other costs actually incurred by him as a result of such discriminatory practice and shall allow reasonable attorney's fees and costs." (Emphasis added.) In rejecting the defendants' claim that the commission's authority was limited to the " 'specifically enumerated' " damages in General Statutes (Rev. to 1997) § 46a-86 (c); *Commission on Human Rights & Opportunities* v. *Board of Education*, supra, 701; the court emphasized the importance of the phrase "include, but not be limited to"; (emphasis omitted; internal quotation marks omitted) id., 702; as indicative of the legislature's intent to provide for an expansive array of remedies under General Statutes (Rev. to 1997) § 46a-86 (c), particularly in light of "the broad remedial purpose of the statute." Id., 703; see also id., 689 (observing that "broad range of constitutional rights" encompassed by General Statutes [Rev. to 1997] § 46a-58 [a] "suggests that an award of compensatory damages for a violation thereof need not necessarily be confined to easily quantifiable monetary losses"). Recognizing the potential deterrent effect of damages awards, the court also considered the "general" purpose of the human rights statutes, namely, "to construct a remedy for discrimination that will, so far as possible, eliminate the discriminatory effects of the past as well as bar like discrimination in the future." (Internal quotation marks

omitted.) Id., 694.

Insofar as I agree with the majority that there are two plausible readings of § 46a-104, thereby rendering it ambiguous with respect to the authorization of punitive damages, I look to extratextual sources as an aid to understanding the meaning of the statute. As the majority observes, the available legislative history is silent on the question before us, but, in contrast to the majority, I do not deem that silence dispositive evidence that "the legislature deemed the remedies expressly authorized in the act, including back pay, compensatory damages, attorney's fees, and costs, to be sufficient to carry out its remedial purpose." Text accompanying footnote 15 of the majority opinion. I do agree with the majority that a comparison of § 46a-104 to related statutes is instructive in divining the legislature's intent, although I am persuaded by the arguments of the commission, as amicus curiae, to focus specifically on a comparison with General Statutes (Supp. 2016) § 46a-86 (b).[3] As distinguished from § 46a-104, which governs the remedies available to a court upon a finding of employment discrimination, General Statutes (Supp. 2016) § 46a-86 (b) governs the commission's remedial authority upon a finding of employment discrimination. In contrast to the breadth of § 46a-104, General Statutes (Supp. 2016) § 46a-86 (b) authorizes the commission only to supplement orders of hiring or reinstatement with up to two years of back pay, subject to adjustment for "[i]nterim earnings, including unemployment compensation and welfare assistance or amounts which could have been earned with reasonable diligence on the part of the person to whom back pay is awarded . . . ." General Statutes (Supp. 2016) § 46a-86 (b). Section 46a-104, however, imposes far fewer constraints on a court's authority to fashion a financial remedy for discrimination. This, of course, suggests that the legislature is well aware of how to cabin a tribunal's remedial authority in cases of employment discrimination when it desires to do so. See, e.g., *Bridgeport Hospital* v. *Commission on Human Rights & Opportunities*, 232 Conn. 91, 112–13, 653 A.2d 782 (1995) (considering limited remedies provided by General Statutes [Rev. to 1995] § 46a-86 [b], and holding that "[t]he enactment of [§ 46a-104] strongly indicates . . . that the legislature did not intend to authorize [the commission] to award . . . damages" for emotional distress arising from employment discrimination). Accordingly, the majority's decision effectively adding language to § 46a-104 limiting the scope of the damages available to compensatory damages runs afoul of the principle that we generally do not supply statutory language that the legislature appears to have chosen to omit.[4] E.g., *Dept. of Public Safety* v. *State Board of Labor Relations*, 296 Conn. 594, 605, 996 A.2d 729 (2010).

Other well established principles governing the construction of the act further persuade me that § 46a-104

should be read to authorize awards of punitive damages. The act is a remedial statutory scheme, and any "ambiguities [therein] . . . should be construed in favor of persons seeking redress thereunder . . . ." (Citation omitted; internal quotation marks omitted.) *Commission on Human Rights & Opportunities* v. *Echo Hose Ambulance*, supra, 322 Conn. 165. This is particularly so in the present case because an award of punitive damages advances the goal of the act, which is to "rid the workplace of discrimination . . . ." *Sullivan* v. *Board of Police Commissioners*, 196 Conn. 208, 216, 491 A.2d 1096 (1985); see also *Vollemans* v. *Wallingford*, 103 Conn. App. 188, 197 n.7, 928 A.2d 586 (2007) ("[t]he noble purpose of [the act] . . . [was] to create an effective machinery in this state for the elimination of discrimination in employment" [internal quotation marks omitted]), aff'd, 289 Conn. 57, 956 A.2d 579 (2008). Punitive damages awards support the act because the legislature "contemplate[d] not merely compensating victims of discrimination for violations of their human rights, but preventing violations of these rights. Prevention requires deterrence—and deterrence . . . requires the possibility of a penalty for those whose actions are sufficiently culpable." *Haynes* v. *Rhone-Poulenc, Inc.*, supra, 206 W. Va. 33; see *Rice* v. *CertainTeed Corp.*, 84 Ohio St. 3d 417, 421, 704 N.E.2d 1217 (1999) (observing that state employment discrimination statute had "a deterrent component concerned with preventing socially noisome business practices"); see also *Ulbrich* v. *Groth*, 310 Conn. 375, 455 n.64, 78 A.3d 76 (2013) ("punishment and deterrence are proper purposes of an award of punitive damages under [the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq.]"); *Commission on Human Rights & Opportunities* v. *Board of Education*, supra, 270 Conn. 695 (award of compensatory damages, when "statutorily authorized, does more than remedy the past discrimination; it also serves as an important social deterrent to future discriminatory conduct").

Moreover, giving effect to the broad language chosen by the legislature in crafting the appropriate remedies also is consistent with the principle that, whenever possible, we construe the act to "complement the provisions" of Title VII, the federal employment discrimination statute. *Commission on Human Rights & Opportunities* v. *Echo Hose Ambulance*, supra, 322 Conn. 160. With no statutory language in § 46a-104 precluding awards of punitive damages under the act or otherwise cabining the type of damages available, I would construe that statute's capacious text in accordance with the legislature's general intent that the act be construed consistently with federal antidiscrimination law, which does specifically authorize courts to award, in cases of intentional discrimination, punitive damages, compensatory damages, and attorney's fees.[5] See 42 U.S.C. § 1981a (a) (2012).

Finally, a construction of § 46a-104 to authorize the punitive damages award in this case accords with persuasive sister state authority on this point, in particular, decisions from the highest state courts of Ohio and West Virginia.[6] Particularly instructive is *Haynes* v. *Rhone-Poulenc, Inc.*, supra, 206 W. Va. 18, in which the West Virginia Supreme Court of Appeals considered the availability of punitive damages for disability based employment discrimination under statutory language very similar to that set forth in § 46a-104 (a). The statute at issue in *Haynes* provided for injunctive relief and "affirmative action *which may include, but is not limited to,* reinstatement or hiring of employees, granting of back pay or any *other legal or equitable relief* as the court deems appropriate. In actions brought under this section, the court in its discretion may award all or a portion of the costs of litigation, including reasonable [attorney's] fees and witness fees, to the complainant." (Emphasis added.) W. Va. Code Ann. § 5-11-13 (c) (LexisNexis 2013). In concluding that "allowing an award of punitive damages gives the statute's language its literal meaning and makes it unnecessary to apply rules of construction or interpretation," the court emphasized that "punitive damages are well within the broad spectrum of remedies made available by the phrase 'any other legal or equitable relief as the court deems appropriate,' because the term 'any legal relief' necessarily includes punitive damages." *Haynes* v. *Rhone-Poulenc, Inc.*, supra, 32. The court also emphasized the liberal construction accorded the antidiscrimination provision, and the deterrent value of punitive damages in preventing employment discrimination. See id., 32–33. Finally, the West Virginia court rejected the majority's approach in the present case in rejecting the employer's comparative reliance on other human rights statutes, in particular, the housing discrimination statute expressly providing for both " 'actual and punitive damages . . . .' " Id., 34. Rather, the court agreed with the plaintiff that the "remedial provisions of both [the employment and housing discrimination statutes] provide for essentially the same broad range of legal and equitable remedies, using different words to accomplish the same purpose." Id.; see also *Rice* v. *CertainTeed Corp.*, supra, 84 Ohio St. 3d 418–21 (punitive damages are available under Ohio's state employment discrimination statute, Ohio Rev. Code Ann. § 4112.99 [West 2007], which authorizes "a civil action for damages, injunctive relief, or any other appropriate relief," given "plain meaning" of broad statutory language without "restrictive modifier" on type of damages). Consistent with these authorities, I would conclude that § 46a-104 authorizes an award of punitive damages in appropriate employment discrimination cases.[7]

In reaching its contrary conclusion, the majority deems the broad language of § 46a-104 and extratextual evidence insufficiently specific to authorize an award

of punitive damages under *Ames* v. *Commissioner of Motor Vehicles*, supra, 267 Conn. 524, which it deems to embody this court's "approach to statutory interpretation" with respect to punitive damages. The majority describes *Ames* as a "persuasive baseline position"; footnote 14 of the majority opinion; and states that *Ames* "required, at least as a default rule, express statutory authorization for statutory punitive damages as a form of relief." Text accompanying footnote 14 of the majority opinion. The majority's analysis is a faithful and logical application of *Ames*. I believe, however, that the analysis in *Ames* on which the majority relies is legally flawed dictum that in fact does not furnish a "persuasive baseline position" for analyzing punitive damage issues.[8] Footnote 14 of the majority opinion.

In *Ames*, we considered whether the plaintiff could recover "not only actual damages but also punitive damages and attorney's fees"; *Ames* v. *Commissioner of Motor Vehicles*, supra, 267 Conn. 531; under a surety bond furnished by a automobile dealer pursuant to General Statutes (Rev. to 1997) § 14-52 (b)[9] " 'as indemnity for any loss sustained by any person by reason of . . . such licensee going out of business.' " Id., 530. The claim against the bond in *Ames* arose from the dealer's allegedly wrongful repossession of the plaintiff's car. See id., 526. The plaintiff then obtained a default judgment for compensatory damages, treble damages for theft under General Statutes § 52-564, and attorney's fees under CUTPA, General Statutes § 42-110g (d). See id., 526–27. We rejected the plaintiff's argument that the phrase " 'any loss' contained in § 14-52 (b) (4) 'is an all encompassing term [that] contains no hint of an exception.' " Id., 531. Using a variety of terms to describe the damages giving rise to the claim, we addressed what we deemed to be the "claim that [the plaintiff was] entitled to recover *punitive damages* against a surety bond furnished in accordance with § 14-52," observing that, "[i]n particular, the plaintiff [sought] indemnification under § 14-52 for the *treble damages* that she was awarded pursuant to § 52-564." (Emphasis added.) Id., 536. We then concluded: "An award of *multiple damages*, however, is an extraordinary remedy that is available only when the legislature expressly provides for such damages by statute. E.g., *DeMilo* v. *West Haven*, 189 Conn. 671, 675–76, 458 A.2d 362 (1983); *Alaimo* v. *Royer*, 188 Conn. 36, 43, 448 A.2d 207 (1982). Accordingly, as with attorney's fees, we require explicit statutory language to support an award of *punitive damages*. Put simply, just as the legislature knows how to authorize an award of attorney's fees when it wishes to do so . . . it also knows how to authorize an award of *punitive damages*."[10] (Citation omitted; emphasis added.) *Ames* v. *Commissioner of Motor Vehicles*, supra, 536.

In my view, we drew two false equivalencies in *Ames* in comparing punitive damages to statutory attorney's

fees and statutory multiple damages awards and, unfortunately, used loose drafting language in arriving at our conclusion. First, it was improper to assume that the same analysis applies to punitive damages and statutory attorney's fees. In contrast to attorney's fees awarded pursuant to a statutory exception to the American Rule, a punitive damages award, whether at common law[11] or pursuant to statute, requires the plaintiff to prove "a reckless indifference to the rights of others or an intentional and wanton violation of those rights." *Vandersluis* v. *Weil*, 176 Conn. 353, 358, 407 A.2d 982 (1978); see *Ulbrich* v. *Groth*, supra, 310 Conn. 446 (noting in case involving CUTPA that "the flavor of the basic requirement to justify an award of punitive damages is described in terms of wanton and malicious injury, evil motive and violence" [internal quotation marks omitted]).

Second, and perhaps more significantly, in *Ames*, we improperly used the doctrinally distinct terms multiple damages and punitive damages interchangeably. This rendered inapt our reliance on *Alaimo* v. *Royer*, supra, 188 Conn. 36, in which this court concluded that the terms "punitive damages" and "exemplary damages" are "merely alternate labels for the same remedy," which is distinct from statutory provisions authorizing multiple damages, such as treble damages for theft under § 52-564.[12] Id., 42–43. Indeed, in *Harty* v. *Cantor Fitzgerald & Co.*, 275 Conn. 72, 881 A.2d 139 (2005), this court followed *Alaimo* and concluded that an arbitrator had the authority to award statutory double damages for unpaid wages under General Statutes § 31-72; id., 92, 98–99; despite the submission providing that he was "not authorized or entitled to include as part of any award . . . special, exemplary or punitive damages or amounts *in the nature of special, exemplary or punitive damages* regardless of the nature or form of the claim or grievance that has been submitted to arbitration . . . ." (Emphasis added; internal quotation marks omitted.) Id., 76; see also *Caulfield* v. *Amica Mutual Ins. Co.*, 31 Conn. App. 781, 786 n.3, 627 A.2d 466 (insurance policy exclusion for punitive and exemplary damages did not encompass statutory multiple damages under General Statutes § 14-295 for injuries, death or property damage arising from enumerated traffic violations), cert. denied, 227 Conn. 913, 632 A.2d 688 (1993). It is, therefore, at best imprecise to refer to statutory multiple damages as "punitive" in the absence of "express designation by the legislature" to that particular effect. See *Harty* v. *Cantor Fitzgerald & Co.*, supra, 91–92 n.10 (surveying punitive damage statutes and observing that some specifically limit punitive damages awards to "multiples of compensatory damages," whereas others provide no such limit).

Finally, beyond being legally flawed, the foregoing discussion in *Ames* with respect to whether the plaintiff could recover her punitive damages award and attor-

ney's fees against the bond required by § 14-52 was a non sequitur that was dictum. See, e.g., *Cruz* v. *Montanez*, 294 Conn. 357, 376–77, 984 A.2d 705 (2009). In *Ames*, we simply did not need to consider whether a particular remedy, such as attorney's fees or punitive damages, was statutorily authorized, in order to determine whether those portions of the judgment constituted a "loss" within the meaning of § 14-52. First, the plaintiff in *Ames* had already been awarded those remedies in the underlying litigation, and the only question was whether she could collect them against the bond. See *Ames* v. *Commissioner of Motor Vehicles*, supra, 267 Conn. 526–27. Thus, the real crux of the statutory construction of § 14-52 lay in our review of the legislative history of that provision, which, we observed, reflected the legislature's view that the bond simply provide "some financial security" for customers to "obtain reimbursement for money owed to them." (Emphasis omitted; internal quotation marks omitted.) Id., 537. In addition to citing Restatement principles governing the law of sureties; see *Ames* v. *Commissioner of Motor Vehicles*, supra, 538–39 n.11, citing Restatement (Third), Suretyship and Guaranty § 73, pp. 290–91 (1996); which preclude the collection of penalties beyond the original obligation, we also noted the relatively small bond amount required under § 14-52 specifically, and compared other surety statutes, such as those governing state and municipal construction contracts; see *Ames* v. *Commissioner of Motor Vehicles*, supra, 537–38; to indicate that, "had the legislature intended for the dealer's bond to indemnify consumers beyond their actual or compensatory damages, the legislature likely would have mandated a significantly larger bond, as it has done in other statutory contexts." Id., 537. In my view, this analysis, which was more focused on the purpose and history of § 14-52, indicates that our consideration in *Ames* of whether attorney's fees and punitive damages were viable remedies under § 14-52 was merely dictum. I thus do not believe that we should be bound or even guided by *Ames* in considering whether § 46a-104 authorizes awards of punitive damages in employment discrimination cases.[13]

In sum, I would conclude that § 46a-104 authorized the jury's punitive damages award in the present case. Consequently, I would reverse the judgment of the Appellate Court and remand the case to that court with direction to remand the case to the trial court to direct judgment with direction to render judgment reinstating that award.

Accordingly, I respectfully dissent.

[1] General Statutes § 46a-104 provides: "The court may grant a complainant in an action brought in accordance with section 46a-100 such legal and equitable relief which it deems appropriate including, but not limited to, temporary or permanent injunctive relief, attorney's fees and court costs. The amount of attorney's fees allowed shall not be contingent upon the amount of damages requested by or awarded to the complainant."

[2] I recognize that this court certified a second question to be answered

should we conclude that § 46a-104 provides for an award of punitive damages, namely, "does the award of punitive damages in § 46a-104 fall within the province of the court or the jury?" *Tomick* v. *United Parcel Service, Inc.*, 317 Conn. 916, 117 A.3d 854 (2015). Neither the majority nor the Appellate Court addressed this issue because their conclusion that § 46a-104 does not authorize a punitive damages award rendered it unnecessary to do so. See *Tomick* v. *United Parcel Service, Inc.*, supra, 157 Conn. App. 334 n.10; footnote 10 of the majority opinion. In view of the fact that a majority of my colleagues disagree with me on the threshold question posed by this appeal, I see no need to address this second issue.

[3] General Statutes (Supp. 2016) § 46a-86 (b) provides: "In addition to any other action taken under this section, upon a finding of a discriminatory employment practice, the presiding officer may order the hiring or reinstatement of any individual, with or without back pay, or restoration to membership in any respondent labor organization. Liability for back pay shall not accrue from a date more than two years prior to the filing or issuance of the complaint. Interim earnings, including unemployment compensation and welfare assistance or amounts which could have been earned with reasonable diligence on the part of the person to whom back pay is awarded shall be deducted from the amount of back pay to which such person is otherwise entitled. The amount of any deduction for interim unemployment compensation or welfare assistance shall be paid by the respondent to the commission which shall transfer such amount to the appropriate state or local agency."

[4] I acknowledge the majority's argument that "the legislature expressly authorized punitive damages in other human rights statutes but did not do so within § 46a-104, and, thus, reading § 46a-104 to allow punitive damages despite the fact that it does not explicitly authorize such damages would render those express authorizations for punitive damages superfluous." In so concluding, the majority relies on numerous human rights statutes, in particular General Statutes (Supp. 2016) § 46a-89 (b) (1), which permits the commission to seek from a court punitive damages awards for violations of General Statutes § 46a-64 (discriminatory public accommodations), General Statutes § 46a-64c (discriminatory housing practices), General Statutes § 46a-81d (sexual orientation public accommodations discrimination), and General Statutes § 46a-81e (sexual orientation housing discrimination). Subdivision (1) of General Statutes (Supp. 2016) § 46a-89 (b) must, however, be read in conjunction with subdivision (2) of subsection (b) of that statute, which implements subdivision (1) and limits such punitive damages to $50,000. The majority also cites the discriminatory credit practices statute, General Statutes (Supp. 2016) § 46a-98, with subsection (c) of that statute authorizing punitive damages awards of not more than $1000 to "an aggrieved person," and subsection (d) of that statute providing for punitive damages in a class action that "shall not exceed the lesser of five thousand dollars or one per cent of the net worth of the creditor."

In my view, the majority's comparative analysis of these statutes and § 46a-104, although superficially appealing, fails to account for the fact that there are different types of statutory punitive damages awards. As this court recently stated, "against the backdrop of our 'conservative' measure of common-law punitive damages, 'the legislature has authorized punitive damage[s] awards for certain causes of action. These statutes fall into three categories: (1) those that limit the amount of the award to no more than two times the actual damages incurred; (2) those that designate a specific, albeit modest, dollar limit for such awards; and (3) those that authorize punitive damages, but leave the amount of the award to the discretion of the court.' " *Hylton* v. *Gunter*, 313 Conn. 472, 486 n.14, 97 A.3d 970 (2014); see also footnote 11 of this opinion. Given the different types of punitive damages available pursuant to statute, I believe that the legislature used the term "punitive damages" in the provisions on which the majority relies, namely, General Statutes (Supp. 2016) §§ 46a-89 (b) and 46a-98 (c) and (d), to describe the limited amount of such damages that they authorize. In contrast, the legislature did not need to use the term "punitive damages" in § 46a-104 because it did not intend to circumscribe the amount of such damages that it authorizes, beyond appellate review for reasonableness and constitutionality. See, e.g., *Ulbrich* v. *Groth*, 310 Conn. 375, 454–56, 78 A.3d 76 (2013). Accordingly, reading the broad language of § 46a-104 to allow for punitive damages awards does not render the term "punitive damages" superfluous in the statutes cited by the majority. See *Rice* v. *CertainTeed Corp.*, 84 Ohio St. 3d 417, 420, 704 N.E.2d 1217 (1999) (rejecting employer's reliance on use of word "punitive damages" elsewhere in human rights

statutes to "[buttress] its position that the word 'damages' standing alone does not include punitives" because existence of specific provisions capping or flooring punitive damages "presupposes their general availability").

[5] The majority also disagrees with the plaintiff's reliance on Title VII and other federal laws, observing that "Congress . . . specifically amended Title VII by enacting the Civil Rights Act of 1991 to provide for compensatory and punitive damages. . . . [Even though Congress took] affirmative steps to provide expressly for punitive damages, the Connecticut legislature has not yet followed suit." (Citation omitted; footnote omitted.) I do not view the language difference between the state and federal statutes as one with a distinction because § 46a-104 is broadly phrased in terms of "legal relief," and does not describe particular types of available damages awards. In other words, I view them as two different ways to say the same thing. See *Haynes* v. *Rhone-Poulenc, Inc.*, supra, 206 W. Va. 34 ("It appears . . . that the two statutes use different approaches to reach the same result—giving . . . courts a broad grant of remedial powers to address a serious social problem. We do not infer from one statutory provision that uses one form of language to grant a broad range of remedial relief an intent to preclude such relief under another statute that can also be fairly read to include a similar broad range of available relief.").

[6] I recognize that this position appears to be a minority view with respect to courts interpreting state employment discrimination statutes lacking express authorization for punitive damages. See, e.g., *Ackelson* v. *Manley Toy Direct, L.L.C.*, 832 N.W.2d 678, 681, 684–86, 688–89 (Iowa 2013) (citing authorities in support of conclusion that punitive damages are not authorized under Iowa Code § 216.15 [9] [a] [8] [Supp. 2009], which authorizes " '[p]ayment to the complainant of damages for an injury caused by the discriminatory or unfair practice which damages shall include but are not limited to actual damages, court costs and reasonable [attorney's] fees' "). Some of these cases, however, involve significantly different statutory language, which, for example, does not contain the word "damages" or other expansive terms as does § 46a-104. See, e.g., *Indiana Civil Rights Commission* v. *Alder*, 714 N.E.2d 632, 638 (Ind. 1999) (statute describing compensation for " 'losses incurred' " did not authorize agency to award punitive damages because " 'losses' " implies emotional or economic loss, "the purpose of punitive damages is not to compensate for injury, and punitive damages do not compensate a 'loss' of the claimant" but, rather, "are designed to penalize or punish or deter the defendant"). Others are simply a different take on the issue that I believe affords too little weight to the remedial nature of such statutes. See, e.g., *Hoy* v. *Angelone*, 554 Pa. 134, 141–42, 720 A.2d 745 (1998) (holding that Pa. Stat. Ann. tit. 43, § 962 [c] [West 1991] does not authorize punitive damages, despite broad language with respect to remedies, on basis of comparison with other statutes that expressly award punitive damages, and concluding that use of phrase " 'affirmative action' " to describe remedies phrase limits financial remedies to those that "[serve] to achieve the remedial goals of the [statute]," such as "make-whole measures, i.e., reinstatement, hiring, and back pay," given primarily punitive purpose of punitive damages).

[7] Other sister state cases are similarly persuasive. See, e.g., *Loomis Electronic Protection, Inc.* v. *Schaefer*, 549 P.2d 1341, 1342–43 (Alaska 1976) (concluding that punitive damages were available remedy under Alaska human rights statute authorizing court to " 'order any other relief, including the payment of money, that is appropriate' " given statute's broad language and legislature's "[intent] to put as many 'teeth' into [the] law as possible"); *Commodore Home Systems, Inc.* v. *Superior Court*, 32 Cal. 3d 211, 218–21, 649 P.2d 912, 185 Cal. Rptr. 270 (1982) (concluding that California Fair Employment and Housing Act, which provides right of action but is silent as to remedy, authorizes punitive damages award in light of Cal. Civil Code § 3294, under which punitive damages are authorized in noncontract cases unless "a contrary legislative intent appears"); *Arthur Young & Co.* v. *Sutherland*, 631 A.2d 354, 370–72 (D.C. 1993) (concluding that District of Columbia Human Rights Act permits awards of punitive damages for employment discrimination given statutory language authorizing court to " 'grant such relief as it deems appropriate, including, but not limited to, such relief as is provided in' " statute providing human rights administrative agency with remedial powers, which include compensatory damages and attorney's fees); see also *Coghlan* v. *H.J. Heinz Co.*, 851 F. Supp. 815, 818–19 (N.D. Tex. 1994) (concluding that punitive damages are available for discrimination claims pursuant to *Caballero* v. *Central Power & Light Co.*, 858 S.W.2d 359, 360 [Tex. 1993], which recognized right to jury trial for "damages" claims

under Texas human rights statutes).

[8] I acknowledge, with some chagrin, that I authored this court's decision in *Ames* and I therefore must accept full responsibility for its incorrect dictum.

[9] Hereinafter, all references to § 14-52 are to the 1997 revision.

[10] With respect to the claim for attorney's fees, the court in *Ames* cited *Fleming* v. *Garnett*, 231 Conn. 77, 93–94, 646 A.2d 1308 (1994), for the proposition that "[t]he [common-law] rule in Connecticut, also known as the American Rule, is that attorney's fees and ordinary expenses and burdens of litigation are not allowed to the successful party absent a contractual or statutory exception. . . . Because we must respect the legislative prerogative of choosing the special circumstances under which [attorney's fees] awards may be made . . . we require a clear expression of the legislature's intent to create a statutory exception [to the rule]." (Citation omitted; internal quotation marks omitted.) *Ames* v. *Commissioner of Motor Vehicles*, supra, 267 Conn. 532–33. Noting a myriad of other "clearly articulated statutory exceptions to our common-law rule" with respect to attorney's fees; id., 533; we recognized that, "when the General Assembly want[s] to authorize the award of attorney's fees it [knows] how to do it. . . . Section 14-52, however, is devoid of any express language authorizing an award of attorney's fees. In the absence of such language, we will not presume that the legislature intended for [that statute] to operate in derogation of our long-standing common-law rule disfavoring the award of attorney's fees to the prevailing party." (Citation omitted; internal quotation marks omitted.) Id.; see also id., 534–35 (rejecting plaintiff's reliance on General Statutes § 14-176 because, inter alia, "it is reasonable to presume that the legislature considered attorney's fees to be an 'expense' within the meaning of § 14-176, rather than a component of any 'loss' or 'damage,' because attorney's fees are a cost, or expense, frequently associated with litigation").

[11] After concluding that "it appears that the legislature deemed the remedies expressly authorized in the act, including back pay, compensatory damages, attorney's fees, and costs, to be sufficient to carry out its remedial purpose"; text accompanying footnote 15 of the majority opinion; the majority observes that, "in Connecticut, common-law punitive damages are limited to attorney's fees and costs"; footnote 15 of the majority opinion, citing *Hylton* v. *Gunter*, 313 Conn. 472, 484, 97 A.3d 970 (2014); and, "[a]s such, by allowing for awards of attorney's fees and costs, § 46a-104 already in effect provides [for] common-law punitive damages as a remedy, and for the plaintiff to recover more in damages, the legislature would have had to expressly said as much." Footnote 15 of the majority opinion. Although the majority's observation is accurate, I emphasize that it is not legally inconsistent to award both attorney's fees and punitive damages under § 46a-104. See *Ford* v. *Blue Cross & Blue Shield of Connecticut, Inc.*, 216 Conn. 40, 63–65, 578 A.2d 1054 (1990) (observing that "structure" of General Statutes § 31-290a "offers compelling evidence that the legislature knew exactly what it was doing in providing such overlapping remedies," namely, punitive damages and attorney's fees, for wrongful termination in retaliation for filing for workers' compensation benefits); see also *Ulbrich* v. *Groth*, supra, 310 Conn. 449–51 and n.62 ("disavow[ing]" *Ford* to extent that it suggests that punitive damages under CUTPA, in absence of other statutory limiting language, are limited to second award of attorney's fees).

[12] I believe that the citation in *Ames* to *DeMilo* v. *West Haven*, supra, 189 Conn. 671, was similarly misplaced, insofar as *DeMilo* did not involve punitive damages but merely observed that a jury award of multiple damages had to be specifically authorized by statute. See id., 675–76. Thus, in *DeMilo*, a general verdict relative to a complaint with common-law and statutory claims could not justify an award of treble damages for the destruction of a bridge under General Statutes § 52-566 when the record did not "clearly" show that "the jury found the damages under the statute allowing the trebling or doubling of the damages, and not for any other alleged cause of action." (Emphasis omitted; internal quotation marks omitted.) Id., 680.

[13] Seemingly in contradiction to *Ames*, as the plaintiff observes, this court has stated that expansive remedial authority conferred by statutory language such as "includes, but not limited to," also allows an award of attorney's fees, notwithstanding the American Rule. See *Piteau* v. *Board of Education*, 300 Conn. 667, 684–86, 15 A.3d 1067 (2011) (rejecting futility based claim that plaintiff did not have to exhaust remedies by presenting claim to state Board of Labor Relations [board] prior to commencing civil action because board was not authorized to grant relief that was sought insofar as General Statutes § 7-471 [5] [B], providing for order of "such further affirmative action as will effectuate the policies of sections 7-467 to 7-477, inclusive,

including but not limited to" reinstatement and withdrawal of bargaining unit certification, had been interpreted to include attorney's fees). *Piteau* is of limited persuasive value in the present case, however, because the court did not squarely consider whether § 7-471 (5) permitted attorney's fees. But see *Council 4*, *AFSCME*, *AFL-CIO* v. *State Board of Labor Relations*, 111 Conn. App. 666, 676, 961 A.2d 451 (2008) (holding, with limited analysis and not considering American Rule, that "imposition of attorney's fees and costs is consistent with . . . § 7-471 [5]" because board "made a specific finding that the award would be an effective and legitimate remedy for breach by the [plaintiff] union of the duty of fair representation"), cert. denied, 291 Conn. 901, 967 A.2d 112 (2009).

---