ROBERT F. MCWEENY *v.* CITY OF HARTFORD ET AL.
(SC 17888)

Palmer, Vertefeuille, Zarella, Schaller and Sullivan, Js.

Argued November 26, 2007—officially released May 20, 2008

*Leon M. Rosenblatt*, for the appellant (plaintiff).

*Denise Aguilera*, general counsel, and *Helen Apostolidis*, senior assistant corporation counsel, for the appellees (named defendant et al.).

*Opinion*

PALMER, J. Under General Statutes § 46a-60 (a) (1),[1] a provision of the Connecticut Fair Employment Practices Act (act), General Statutes § 46a-51 et seq., it is an unlawful employment practice for an employer to refuse to hire, to discharge from employment or to discriminate against any individual in the terms, conditions or privileges of employment on account of, inter alia, the individual's marital status. This appeal requires us to determine whether the recipient of a surviving spouse pension allowance has standing under § 46a-60 (a) (1) to file a marital status discrimination complaint against the former employer of his deceased spouse and its agents because they terminated his surviving spouse pension allowance upon his remarriage. The plaintiff, Robert F. McWeeny,[2] appeals from the judgment of the trial court dismissing his appeal from the decision of the commission on human rights and opportunities (commission) dismissing his complaint against the named defendant, the city of Hartford (city), the defendant municipal employees retirement fund (retirement fund), and the defendant Hartford pension commission.[3] The plaintiff claims that the trial court im-

---

[1] General Statutes § 46a-60 (a) provides in relevant part: "It shall be a discriminatory practice in violation of this section:

"(1) For an employer, by the employer or the employer's agent, except in the case of a bona fide occupational qualification or need, to refuse to hire or employ or to bar or to discharge from employment any individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment because of the individual's race, color, religious creed, age, sex, marital status, national origin, ancestry, present or past history of mental disability, mental retardation, learning disability or physical disability, including, but not limited to, blindness . . . ."

[2] The plaintiff is a judge of the Superior Court. His judicial position, however, is not relevant to this appeal.

[3] The plaintiff named the commission, along with the city, retirement fund and Hartford pension commission, as defendants in his administrative appeal to the Superior Court. In the interest of simplicity, all references in this opinion to the defendants are to the municipal defendants only.

properly concluded that only an employee or prospective employee who has suffered an injury due to an alleged discriminatory employment practice by his or her employer or prospective employer has standing under § 46a-60 (a) (1) to bring an employment discrimination claim. The plaintiff contends that, contrary to the determination of the trial court, § 46a-60 (a) (1) authorizes any person who is injured by an employer's discriminatory employment practice to bring a claim against the employer, regardless of whether the discriminatory practice affected the circumstances or conditions of the person's employment. We reject the plaintiff's claim and, accordingly, affirm the judgment of the trial court.

The following undisputed facts and procedural history are set forth in the trial court's memorandum of decision. "The plaintiff . . . and H. Maria Cone married on March 9, 1984. . . . Cone worked for the city . . . from February 6, 1978, until May 6, 1994, when she retired from municipal service. Pursuant to the terms of the pension plan offered by the city . . . Cone qualified for retirement pension benefits and began receiving those benefits from the city . . . through [the] . . . retirement fund . . . after she retired from city service. . . . Cone and [the plaintiff] remained married until the time of [Cone's] death.[4] Because [the plaintiff] and . . . Cone were married at the time of her death, [the plaintiff] applied for and began receiving the surviving spouse allowance, which was equal to one half of Cone's monthly pension benefit. [The plaintiff] is not a current or former employee of the city . . . and he has never sought employment with the city.

"Pursuant to the terms of [the city's] pension plan, the surviving spouse pension allowance terminates

---

[4] At the time of her death, Cone was a judge of the Superior Court. Her official position at that time, however, is not relevant to this appeal.

upon the death or remarriage of the surviving spouse. On September 13, 2003, [the plaintiff] remarried and the city shortly thereafter stopped paying [him] the survivor's benefit because of his remarriage.

"On February 11, 2004, [the plaintiff] filed a complaint with the commission, pursuant to [General Statutes] § 46a-82 (a)[5] . . . . [The plaintiff essentially claimed] that the defendants [had] engaged in an alleged discriminatory employment practice by discriminating against *him* on account of *his* marital status by terminating *his* surviving spouse allowance. Significantly, [the plaintiff did] not claim that the defendants [had] discriminated against his former spouse, [Cone], in any way, including [on the basis of] her marital status. [The plaintiff also did] not claim that . . . Cone received a less favorable pension benefit package than any other employee of the city. Instead, his complaint [was] limited to the sole contention that the defendants discriminated against *him* on the basis of *his* marital status.

"The defendants filed an answer denying that they had discriminated against [the plaintiff] on the basis of his marital status or otherwise. After a preliminary investigation, an investigator of the commission, pursuant to [General Statutes] § 46a-83,[6] determined that there was reasonable cause to believe that the defen-

---

[5] General Statutes § 46a-82 (a) provides in relevant part: "Any person claiming to be aggrieved by an alleged discriminatory practice . . . may, by himself or his attorney, make, sign and file with the commission a complaint in writing under oath, which shall state the name and address of the person alleged to have committed the discriminatory practice, and which shall set forth the particulars thereof and contain such other information as may be required by the commission. . . ."

[6] General Statutes § 46a-83 provides in relevant part: "(f) Upon a determination that there is reasonable cause to believe that a discriminatory practice has been or is being committed as alleged in the complaint, an investigator shall attempt to eliminate the practice complained of by conference, conciliation and persuasion within fifty days of a finding of reasonable cause. The refusal to accept a settlement shall not be grounds for dismissal of any complaint. . . ."

dants had committed a discriminatory practice. On September 29, 2004, the complaint was certified to the commission's executive director and to the attorney general.

"A public hearing was held before a human rights referee assigned by the commission. The parties presented testimony, and the referee admitted various documents into the record. Following the close of evidence, the parties submitted written briefs.

"On August 2, 2005, the referee issued a written decision dismissing [the plaintiff's] complaint on the [ground] that [the plaintiff] lacked standing to bring his claim of marital status discrimination before the commission [because the plaintiff never had or sought an employment relationship of any kind with the city].

"[The plaintiff] filed [an] administrative appeal on September 13, 2005. In his appeal, [the plaintiff maintained] that he has standing to bring [his] . . . [claim] and that he [was] entitled, as a matter of law, to reinstatement of his surviving spouse pension allowance, with back payments and interest." (Emphasis in original.)

After a hearing on the plaintiff's administrative appeal, the trial court rejected his contention that he has standing under § 46a-60 (a) (1) to bring his claim against the defendants. The court explained that, in order to seek relief under a statutory scheme, a complainant must fall within the zone of interests that the statute was intended to protect. After examining the language of § 46a-60 (a) (1), the trial court concluded that, "[b]y its plain terms . . . § 46a-60 (a) (1) prohibits an employer from refusing to hire or employ, or to bar or discharge from employment 'any individual' because of, inter alia, the individual's marital status. This statutory language . . . focuses on employers and their hiring (and refusal to hire) and firing of employees or

prospective employees. The language does not address or even mention individuals who fall outside this relationship. These words express, therefore, a clear and unambiguous intent by the legislature to regulate the relationship between employers and employees [or] employers and prospective employees and to prevent employers from discharging from employment, or refusing to hire, individuals because of, inter alia, their marital status." The trial court then observed that the plaintiff "made no allegations in this case that the city refused to hire or employ him, or barred or discharged him from employment." The court further stated that the plaintiff had not brought his claim "in a representative capacity on behalf of [his deceased spouse] or her estate, alleging that the city discriminated against her regarding her compensation or in [the] terms, conditions or privileges of her employment." Rather, the court explained, the plaintiff's sole contention was that the city had discriminated against him personally by terminating his surviving spouse pension allowance. The court concluded that, because § 46a-60 (a) (1) does not regulate an employer's relationship with anyone other than an employee or prospective employee, the plaintiff was not within the zone of interests that the statute was intended to protect.

In reaching its conclusion, the trial court rejected the plaintiff's contention that § 46a-82 (a), which governs the filing of complaints with the commission, conferred standing on him to bring his claim because it authorizes "[a]ny person claiming to be aggrieved by an alleged discriminatory practice . . . [to] file with the commission a complaint . . . ." General Statutes § 46a-82 (a). The court explained that the plaintiff "can only be an individual claiming to be aggrieved by an alleged discriminatory practice if he falls within the class of individuals against whom a discriminatory practice could be committed. Because the class of individuals against

whom a discriminatory practice could be committed is, in this instance, defined and limited by § 46a-60 (a) (1), which governs discriminatory employment practices, the plaintiff's standing to bring [his claim] rises and falls on the meaning and construction of § 46a-60 (a) (1)." The court also rejected the plaintiff's contention that federal case law interpreting Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (Title VII),[7] the federal counterpart to the state act, supports the claim that individuals other than employees or prospective employees have standing under §§ 46a-60 (a) (1) and 46a-82 (a) to challenge an employer's discriminatory practices.

On appeal to this court,[8] the plaintiff challenges the trial court's determination that employee or prospective employee status is a prerequisite to bringing a claim under § 46a-60 (a) (1). Because we agree with the conclusion of the trial court, we affirm its judgment.

As a preliminary matter, we set forth the applicable standard of review. "The issue of standing implicates subject matter jurisdiction and is therefore a basis for granting a motion to dismiss. Practice Book § 10-31 (a). [I]t is the burden of the party who seeks the exercise of jurisdiction in his favor . . . clearly to allege facts demonstrating that he is a proper party to invoke judi-

---

[7] Title 42 of the United States Code, § 2000e-2 (a), provides: "It shall be an unlawful employment practice for an employer—

"(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

"(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2 (a) (2000).

[8] The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

cial resolution of the dispute. . . . Because a determination regarding the trial court's subject matter jurisdiction raises a question of law, our review is plenary." (Citations omitted; internal quotation marks omitted.) *St. George* v. *Gordon*, 264 Conn. 538, 544–45, 825 A.2d 90 (2003).

This court repeatedly has stated that "[s]tanding is not a technical rule intended to keep aggrieved parties out of court; nor is it a test of substantive rights. Rather it is a practical concept designed to ensure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions which may affect the rights of others are forged in hot controversy, with each view fairly and vigorously represented. . . . These two objectives are ordinarily held to have been met when a complainant makes a colorable claim of direct injury he has suffered or is likely to suffer, in an individual or representative capacity. Such a personal stake in the outcome of the controversy . . . provides the requisite assurance of concrete adverseness and diligent advocacy. . . . The requirement of directness between the injuries claimed by the plaintiff and the conduct of the defendant also is expressed, in our standing jurisprudence, by the focus on whether the plaintiff is the proper party to assert the claim at issue. . . .

"Two broad yet distinct categories of aggrievement exist, classical and statutory. . . . Classical aggrievement requires a two part showing. First, a party must demonstrate a specific, personal and legal interest in the subject matter of the [controversy], as opposed to a general interest that all members of the community share. . . . Second, the party must also show that the [alleged conduct] has specially and injuriously affected that specific personal or legal interest. . . .

"Statutory aggrievement [however] exists by legislative fiat, not by judicial analysis of the particular facts

of the case. In other words, in cases of statutory aggrievement, particular legislation grants standing to those who claim injury to an interest protected by that legislation." (Internal quotation marks omitted.) *Windels* v. *Environmental Protection Commission*, 284 Conn. 268, 288, 933 A.2d 256 (2007).

"In order to determine whether a party has standing to make a claim under a statute, a court must determine the interests and the parties that the statute was designed to protect. . . . Essentially the standing question in such cases is whether the . . . statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief. *Warth* v. *Seldin*, 422 U.S. 490, 500, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975). The plaintiff must be within the zone of interests protected by the statute." (Citation omitted; internal quotation marks omitted.) *St. George* v. *Gordon*, supra, 264 Conn. 545–46. "It has been [noted] that the 'zone of interests' test bears a family resemblance to the 'scope of the risk' doctrine in the law of torts. L. Tribe, American Constitutional Law [(1978) § 3-22], pp. 97–98. In tort law, it is not enough that the defendant's violation of the law caused injury to a plaintiff. The defendant must also owe that plaintiff a duty. Similarly, with respect to the law of [statutory] standing, it is not enough that a party is injured by an act or omission of another party. The defendant must also have violated some duty *owed to the plaintiff*." (Emphasis added.) *Planning & Zoning Commission* v. *Gaal*, 9 Conn. App. 538, 544, 520 A.2d 246, cert. denied, 203 Conn. 803, 522 A.2d 294 (1987).

Whether the recipient of a surviving spouse pension allowance is within the class of persons whom § 46a-60 (a) (1) was intended to protect presents a question of statutory interpretation. "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) *Windels* v. *Environmental Protection Commission*, supra, 284 Conn. 294–95.

We begin our analysis, therefore, with the language of § 46a-60 (a), which provides in relevant part that "[i]t shall be a discriminatory practice in violation of this section . . . (1) [f]or an employer, by the employer or the employer's agent, except in the case of a bona fide occupational qualification or need, to refuse to hire or employ or to bar or to discharge from employment any individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment because of the individual's race, color, religious creed, age, sex, marital status, national origin,

ancestry, present or past history of mental disability, mental retardation, learning disability or physical disability, including, but not limited to, blindness . . . ." By its plain and unambiguous terms, § 46a-60 (a) (1) prohibits an employer from firing or refusing to hire or discriminating against any employee or prospective employee in the terms, conditions or privileges of employment. Thus, § 46a-60 (a) (1) pertains only to those persons who have sought or obtained an employment relationship with the employer alleged to have engaged in a discriminatory employment practice. The plaintiff does not fall within either of those categories.

Despite this plain statutory language, the plaintiff contends that the protections of § 46a-60 (a) (1) extend to his right to payments as a surviving spouse under Cone's pension plan because § 46a-60 (a) (1) speaks expansively in terms of "any individual . . . ." The plaintiff's argument fails because it ignores the statutory language that immediately precedes the term "any individual" and that limits the meaning of the term to those persons who have been denied employment or have been discharged from employment. Thereafter, in disjunctive language immediately following the term "any individual," § 46a-60 (a) (1) also proscribes discrimination against "*such individual* in compensation or in terms, conditions or privileges of employment" because of, inter alia, the individual's marital status. (Emphasis added.) General Statutes § 46a-60 (a) (1). The term "such individual" plainly refers back to "any individual," which, as we have explained, includes any person who has sought or obtained employment with the employer. See, e.g., *LaProvidenza* v. *State Employees' Retirement Commission*, 178 Conn. 23, 27, 420 A.2d 905 (1979) ("The word 'such' has been construed as an adjective referring back to and identifying something previously spoken of; the word naturally, by grammatical usage, refers to the last antecedent. . . . The accepted dic-

tionary definitions of 'such' include 'having a quality already or just specified,' 'previously characterized or specified,' and 'aforementioned.' " [Citations omitted.]). Because the plaintiff has not alleged an injury arising out of any action or decision that was taken against him in his capacity as an employee of the city or as an applicant for employment with the city, his alleged injury falls outside the purview of § 46a-60 (a) (1). Put differently, the plaintiff cannot invoke the protections of § 46a-60 (a) (1) because he has not alleged an injury in any employment relationship that he had or sought to have with the city.

The plaintiff further contends that § 46a-82 (a), which governs the filing of claims under § 46a-60 (a) (1), supports a more liberal view of standing under § 46a-60 (a) (1) because it permits "[a]ny person claiming to be aggrieved by an alleged discriminatory practice . . . [to] file with the commission a complaint . . . ." (Emphasis added.) General Statutes § 46a-82 (a). The plaintiff maintains that, because § 46a-82 (a) authorizes "[a]ny person" claiming to be aggrieved by an employer's discriminatory employment practice to file a claim against the employer, we reasonably may construe § 46a-60 (a) (1) as imposing no requirement of an actual or prospective employment relationship between the complainant and the employer. As the trial court explained in rejecting this argument, however, "[t]he legislature limited its broad use of the phrase 'any individual claiming to be aggrieved' in § 46a-82 (a) by the phrase 'by an alleged discriminatory practice.' Consequently, [the plaintiff] can only be an individual claiming to be aggrieved by an alleged discriminatory practice if he falls within the class of individuals against whom a discriminatory practice could be committed. Because the class of individuals against whom a discriminatory practice could be committed is, in this instance, defined and limited by § 46a-60 (a) (1), which governs discrimi-

natory . . . practices [committed against employees, former employees or prospective employees], the plaintiff's standing to bring this complaint rises and falls on the meaning and construction of § 46a-60 (a) (1). [Because] . . . the plain language of § 46a-60 (a) (1) [reflects] a legislative intent to protect employees or prospective employees only, [the plaintiff's] reliance on § 46a-82 (a) is without avail."

We also reject the plaintiff's contention that case law construing Title VII supports the broad construction of § 46a-60 (a) (1) that he advocates. Although it is true, as the plaintiff maintains, that we generally look for guidance to case law interpreting Title VII when construing our state fair employment legislation; e.g., *Wroblewski* v. *Lexington Gardens, Inc.*, 188 Conn. 44, 53, 448 A.2d 801 (1982) ("we are . . . guided by the case law surrounding federal fair employment legislation . . . since this court has previously confirmed our legislature's intention to make the Connecticut statute coextensive with the federal" [citation omitted; internal quotation marks omitted]); such guidance is unnecessary when the language of our state statutory scheme, like the pertinent language of § 46a-60 (a) (1), is susceptible of only one reasonable interpretation.[9]

---

[9] We note, moreover, that the pertinent language of Title VII is different from the statutory language at issue in the present case. In particular, the federal provision prohibits discrimination against "any individual with respect to his compensation, terms, conditions, or privileges of employment . . . ." 42 U.S.C. § 2000e-2 (a) (1) (2000). By contrast, the protections of § 46a-60 (a) (1), as we have explained, are expressly limited to those individuals who have sought or obtained employment with the employer. This linguistic distinction between the act and Title VII further undermines the plaintiff's claim that case law interpreting Title VII is relevant to our construction of § 46a-60 (a) (1).

Indeed, even if we were to seek guidance from case law interpreting Title VII, we agree with the trial court that the majority of that case law supports the conclusion that, contrary to the assertion of the plaintiff, only employees, former employees or prospective employees have standing to bring a federal employment discrimination claim. See, e.g., *Llampallas* v. *Mini-Circuits, Lab, Inc.*, 163 F.3d 1236, 1243 (11th Cir. 1998) ("courts have almost universally held that the scope of the term 'any individual' [in 42 U.S.C. § 2000e-

Finally, we briefly address the plaintiff's contention that, because § 46a-60 (a) (1) is a remedial statute, it should be construed broadly to effectuate the intent of the legislature to eliminate employment related discrimination. Although we agree that "the important and salutary public policy expressed in the antidiscrimination provisions of [§ 46a-60 (a) (1)] cannot be overstated"; *Thibodeau* v. *Design Group One Architects, LLC*, 260 Conn. 691, 709, 802 A.2d 731 (2002); the plain language of § 46a-60 (a) (1) limiting its protections to employees, former employees or prospective employees "is, itself, an expression of public policy that cannot be separated from the policy reflected in the [statute's] ban on discriminatory employment practices." Id., 706. In other words, although we acknowledge that ambiguities in the act should be construed in favor of persons seeking redress thereunder, "we are not free to accomplish a result that is contrary to the intent of the legislature as expressed in the act's plain language. . . . The statute before us has no ambiguity that we could elect to construe either broadly or narrowly." (Citation omitted; internal quotation marks omitted.) *Barton* v. *Ducci*

2 (a) (1)] is limited to employees"), cert. denied, 528 U.S. 930, 120 S. Ct. 327, 145 L. Ed. 2d 255 (1999); *Serapion* v. *Martinez*, 119 F.3d 982, 985 (1st Cir. 1997) ("[a]lthough the language [of Title VII] . . . speaks of 'any individual,' courts long ago concluded that Title VII is directed at, and only protects, employees and potential employees"), cert. denied, 522 U.S. 1047, 118 S. Ct. 690, 139 L. Ed. 2d 636 (1998); *Alexander* v. *Rush North Shore Medical Center*, 101 F.3d 487, 491 (7th Cir. 1996) (overruling previous case declining to "[restrict] . . . [Title VII's] protection to only former, present, and potential employees"), cert. denied, 522 U.S. 811, 118 S. Ct. 54, 139 L. Ed. 2d 19 (1997); *Kern* v. *Rochester*, 93 F.3d 38, 45 (2d Cir. 1996) ("Title VII is an employment law, available only to employees (or prospective employees) seeking redress for the unlawful employment practices of their employers" [internal quotation marks omitted]), cert. denied, 520 U.S. 1155, 117 S. Ct. 1335, 137 L. Ed. 2d 494 (1997). For present purposes, however, it suffices to say that case law construing Title VII does not materially advance the plaintiff's position even if we were to assume, arguendo, that such case law is relevant to our construction of the act.

*Electrical Contractors, Inc.,* 248 Conn. 793, 807, 730 A.2d 1149 (1999). We therefore reject the plaintiff's contention that the act's remedial purpose supports his claim of standing.

For the foregoing reasons, we conclude that the plaintiff's alleged injury is not one that falls within the purview of § 46a-60 (a) (1). Consequently, the trial court properly dismissed the plaintiff's appeal from the commission's dismissal of his complaint for lack of standing.

The judgment is affirmed.

In this opinion the other justices concurred.