******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# JAMES DEMARCO *v.* CHARTER OAK TEMPLE RESTORATION ASSOCIATION, INC.
## (AC 46099)

Bright, C. J., and Alvord and Palmer, Js.

*Syllabus*

The plaintiff appealed to this court from the judgment rendered for the defendant employer on the plaintiff's claim for employment discrimination pursuant to the Connecticut Fair Employment Practices Act (CFEPA) (§ 46a-51 et seq.). The defendant terminated the plaintiff's employment shortly after the plaintiff took a leave of absence to be with his newborn son. The son suffered from various ailments, all allegedly serious medical conditions that rendered him physically disabled within the meaning of CFEPA. The plaintiff alleged in his complaint that the defendant had violated a provision (§ 46a-60 (b) (1)) of CFEPA when it terminated the plaintiff's employment because of his association with a disabled individual, namely, his son. The trial court granted the defendant's motion to strike the operative complaint on the ground that § 46a-60 (b) (1) did not apply to claims of discrimination arising from an employee's association with a physically disabled individual. *Held* that the trial court properly concluded that CFEPA does not create a cause of action for associational discrimination: although the plain and unambiguous language of § 46a-60 (b) (1) clearly protects physically disabled employees from being discharged from their employment on account of their own physical disabilities, there is no language in § 46a-60 (b) (1) or elsewhere in CFEPA that extends protection to employees who, though not physically disabled themselves, associate with physically disabled individuals; moreover, although CFEPA is remedial in nature and, therefore, must be interpreted, whenever reasonably possible, to effectuate the beneficent purpose of eliminating employment related discrimination, that principle of statutory construction did not authorize this court to ignore the plain language of § 46a-60 (b) (1) and the limits that the language places on achieving this purpose; furthermore, the application of the plain and unambiguous language of § 46a-60 (b) (1) does not lead to bizarre or unreasonable results and the statute as literally construed reaches the entire protected class of employees who have physical disabilities.

Argued December 4, 2023—officially released June 18, 2024

*Procedural History*

Action to recover damages for employment discrimination, and for other relief, brought to the Superior

Court in the judicial district of Hartford, where the court, *Rosen, J.*, granted the defendant's motion to strike; thereafter, the court, *Rosen, J.*, granted the plaintiff's motion for judgment and rendered judgment thereon, from which the plaintiff appealed to this court. *Affirmed.*

*James V. Sabatini*, for the appellant (plaintiff).

*Bernard E. Jacques*, with whom was *Lauren T. Graham*, for the appellee (defendant).

*Opinion*

PALMER, J. The plaintiff, James Demarco, appeals from the judgment of the trial court rendered in favor of the defendant, Charter Oak Temple Restoration Association, Inc., following the granting of the defendant's motion to strike the plaintiff's revised complaint. The revised complaint alleged that the defendant violated General Statutes § 46a-60 (b) (1),[1] a provision of the Connecticut Fair Employment Practices Act (CFEPA), General Statutes § 46a-51 et seq., by terminating the plaintiff's employment because of his association with a disabled individual. On appeal, the plaintiff claims that

---

[1] General Statutes § 46a-60 provides in relevant part: "(b) It shall be a discriminatory practice in violation of this section:

"(1) For an employer, by the employer or the employer's agent, except in the case of a bona fide occupational qualification or need, to refuse to hire or employ or to bar or to discharge from employment any individual or to discriminate against any individual in compensation or in terms, conditions or privileges of employment because of the individual's race, color, religious creed, age, sex, gender identity or expression, marital status, national origin, ancestry, present or past history of mental disability, intellectual disability, learning disability, physical disability, including, but not limited to, blindness, status as a veteran or status as a victim of domestic violence . . . ."

Section 46a-60 was amended after the plaintiff's employment was terminated in 2018; see, e.g., Public Acts 2019, No. 19-16, § 4; and again after he initiated this action in 2021; see, e.g., Public Acts 2022, No. 22-78, §§ 7 and 8; but those changes are not relevant to this appeal. For convenience, we refer to the current revision of § 46a-60.

the trial court improperly concluded that his allegations failed to state a valid cause of action under CFEPA because, as the court determined, CFEPA does not recognize claims for associational discrimination on the basis of disability. We disagree with the plaintiff and, accordingly, affirm the judgment of the trial court.

The following procedural history and facts, as alleged in the plaintiff's revised complaint,[2] are relevant to our resolution of the issue on appeal. The plaintiff had been employed by the defendant as a programming coordinator since March 25, 2017. The plaintiff was qualified for that job, was not inattentive at work and performed his job well. At some point prior to November 7, 2018, the plaintiff took a leave of absence from work to be with his newborn son, who suffered from jaundice, lip tie and silent reflux, all serious medical conditions that rendered his son physically disabled within the meaning of CFEPA. On November 7, 2018, the defendant terminated the plaintiff's employment. During the plaintiff's termination meeting, the defendant made reference to the fact that the plaintiff's son was ill. The defendant believed that the plaintiff's association with his disabled son would cause the plaintiff to be inattentive at work.

In response to the defendant's actions, the plaintiff filed a complaint with the Commission on Human Rights and Opportunities (commission) on May 3, 2019. The commission issued a release of jurisdiction on October 29, 2020, and on January 27, 2021, the plaintiff commenced this action alleging that the defendant "violated [CFEPA] when [it] terminated the [plaintiff's employment] because of his association with a disabled individual," namely, his son. The plaintiff filed a revised complaint on May 24, 2021, and the defendant filed a motion

---

[2] "[I]n ruling on a motion to strike, we take the facts alleged in the complaint as true." (Internal quotation marks omitted.) *Ring* v. *Litchfield Bancorp*, 174 Conn. App. 813, 815, 167 A.3d 462 (2017).

to strike the revised complaint in its entirety. In support of its motion, the defendant argued that the plain language of CFEPA does not prohibit discrimination on the basis of an employee's association with a disabled individual. The plaintiff filed an objection to the defendant's motion in which he argued that "CFEPA permits claims to be brought by individuals not specifically included in CFEPA's list of protected classes" and that, consequently, he had properly stated a claim for associational discrimination. The defendant subsequently filed a reply to the plaintiff's objection.

On February 10, 2022, the court, *Rosen, J.*, granted the defendant's motion to strike. The court concluded that § 46a-60 (b) (1) is "clear and unambiguous" and, by its plain language, "applies only to discrimination based on [a plaintiff's own] disabilities, not to alleged discrimination based on [a plaintiff's] association with an individual with a disability." In support of its conclusion, the court observed that, "when the legislature intended to broaden the scope of a discrimination statute to include persons associated with a disability, it expressly did so," as exemplified by General Statutes § 46a-64c (a) (6) (A) and (B), which prohibits associational discrimination in the housing context. The plaintiff thereafter filed a motion for judgment, which the court granted on December 5, 2022. This appeal followed.

On appeal, the plaintiff claims that the court's conclusion that CFEPA does not prohibit disability discrimination by association derives from too narrow an interpretation of § 46a-60 (b) (1) and defeats its remedial purpose. The defendant responds that the plain language of § 46a-60 (b) (1) leaves no room for interpretation. It argues that § 46a-60 (b) (1) clearly and unambiguously provides protection from discrimination to individuals who themselves have physical disabilities but not to individuals based upon their association with

other individuals who have physical disabilities. We agree with the defendant that CFEPA does not create a cause of action for associational discrimination as the plaintiff contends.

We begin our analysis by setting forth our standard of review and the legal principles relevant to our resolution of this claim. "The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any complaint . . . to state a claim upon which relief can be granted. . . . A motion to strike challenges the legal sufficiency of a pleading, and, consequently, requires no factual findings by the trial court. . . . [The court takes] the facts to be those alleged in the complaint . . . and [construes] the complaint in the manner most favorable to sustaining its legal sufficiency. . . . Thus, [i]f facts provable in the complaint would support a cause of action, the motion to strike must be denied. . . . Moreover . . . [w]hat is necessarily implied [in an allegation] need not be expressly alleged. . . . It is fundamental that in determining the sufficiency of a complaint challenged by a defendant's motion to strike, all well-pleaded facts and those facts necessarily implied from the allegations are taken as admitted." (Internal quotation marks omitted.) *Mashantucket Pequot Tribal Nation* v. *Factory Mutual Ins. Co.*, 224 Conn. App. 429, 441–42, 313 A.3d 1219 (2024).

In the present case, the court granted the defendant's motion to strike because it concluded that CFEPA, and § 46a-60 (b) (1) more specifically, does not apply to claims of discrimination arising from an employee's association with a physically disabled individual. Analysis of this legal conclusion presents a question of statutory construction over which we exercise plenary review. See *Desrosiers* v. *Diageo North America, Inc.*, 314 Conn. 773, 782, 105 A.3d 103 (2014).

"When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent

of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. General Statutes § 1-2z." (Citation omitted; internal quotation marks omitted.) *Seramonte Associates, LLC* v. *Hamden*, 345 Conn. 76, 83–84, 282 A.3d 1253 (2022). "[A] statute is plain and unambiguous when the meaning . . . is so strongly indicated or suggested by the [statutory] language . . . that . . . it appears to be *the* meaning and appears to preclude any other likely meaning. . . . [I]f the text of the statute at issue . . . would permit more than one likely or plausible meaning, its meaning cannot be said to be plain and unambiguous." (Emphasis in original; internal quotation marks omitted.) *Ledyard* v. *WMS Gaming, Inc.*, 338 Conn. 687, 698 n.6, 258 A.3d 1268 (2021).

We now turn to the language of § 46a-60 (b), which provides in relevant part: "It shall be a discriminatory practice in violation of this section . . . (1) For an employer, by the employer or the employer's agent, except in the case of a bona fide occupational qualification or need, to refuse to hire or employ or to bar or *to discharge from employment any individual* or to discriminate against any individual in compensation or in terms, conditions or privileges of employment *because of the individual's* race, color, religious creed, age, sex, gender identity or expression, marital status, national origin, ancestry, present or past history of mental disability, intellectual disability, learning disability,

*physical disability*, including, but not limited to, blindness, status as a veteran or status as a victim of domestic violence . . . ." (Emphasis added.) These plain and unambiguous terms prohibit employers from "discriminating against any employee or prospective employee in the terms, conditions or privileges of employment." *McWeeny* v. *Hartford*, 287 Conn. 56, 67, 946 A.2d 862 (2008). With respect to a discrimination claim based on disability, § 46a-60 (b) (1) prohibits an employer from "discharg[ing] from employment any individual . . . because of *the individual's* . . . physical disability . . . ."[3] (Emphasis added.) The use of the term "individual's" as a possessive noun attached to "physical disability" plainly establishes that the "physical disability" is that of the employee. See *Glastonbury Volunteer Ambulance Assn., Inc.* v. *Freedom of Information Commission*, 227 Conn. 848, 852, 633 A.2d 305 (1993) (construing statute "in the light of ordinary rules of English grammar and sentence structure"). This language evinces only one meaning—that § 46a-60 (b) (1) protects physically disabled employees from being discharged from their employment on account of their own physical disabilities. See *Ledyard* v. *WMS Gaming, Inc.*, supra, 338 Conn. 698 n.6; see also *Desrosiers* v. *Diageo North America, Inc.*, supra, 314 Conn. 775 ("[u]nder [CFEPA] . . . employers may not discriminate against certain protected classes of individuals, including those who are physically disabled").

Moreover, as the plaintiff recognizes, there is no language in § 46a-60 (b) (1), or elsewhere in CFEPA, that extends protection to employees who, though not physically disabled themselves, associate with physically disabled individuals. "[I]t is a well settled principle of statutory construction that the legislature knows how to

---

[3] General Statutes § 46a-51 provides in relevant part: "(15) 'Physically disabled' refers to any individual who has any chronic physical handicap, infirmity or impairment, whether congenital or resulting from bodily injury, organic processes or changes or from illness, including, but not limited to,

convey its intent expressly . . . or to use broader or limiting terms when it chooses to do so." (Internal quotation marks omitted.) *Costanzo* v. *Plainfield*, 344 Conn. 86, 108, 277 A.3d 772 (2022). In fact, as the trial court observed, the legislature did precisely that in § 46a-64c (a) (6) (A) and (B), pertaining to discrimination in housing practices. Section 46a-64c (a) (6) (A) and (B) expressly prohibits discrimination in connection with the sale or rental of a dwelling to any buyer or renter because of, inter alia, "a . . . physical . . . disability of . . . any person associated with such buyer or renter. . . ." This supports the conclusion that, if the legislature had intended to include disability discrimination by association within the purview of CFEPA, it would have conveyed that intent expressly. Indeed, "[w]here a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject . . . is significant to show that a different intention existed." (Internal quotation marks omitted.) *State* v. *Cody M.*, 337 Conn. 92, 103, 259 A.3d 576 (2020).

A long-standing distinction between CFEPA and the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12101 et seq. (2018), buttresses this conclusion. See *Evening Sentinel* v. *National Organization for Women*, 168 Conn. 26, 35 n.5, 357 A.2d 498 (1975) ("we follow the usual rule in statutory interpretation that the difference between the state and federal acts was purposeful and is meaningful"). The ADA prohibits discrimination on the basis of physical disability at the federal level and, unlike CFEPA, it expressly prohibits employers from "excluding or otherwise denying equal jobs or benefits to a qualified individual *because of the known disability of an individual with whom the qualified individual is known to have a relationship*

---

epilepsy, deafness or being hard of hearing or reliance on a wheelchair or other remedial appliance or device . . . ."

*or association* . . . ." (Emphasis added.) 42 U.S.C. § 12112 (b) (4) (2018). The ADA was enacted in 1990; see Americans with Disabilities Act of 1990, Pub. L. No. 101-336, 104 Stat. 327; and, although our legislature has amended CFEPA several times since 1990, it has not adopted the same or similar language. This strongly suggests that our legislature intended to maintain this distinction between CFEPA and the ADA and that its decision not to include associational discrimination within the scope of CFEPA was purposeful. See *Beason* v. *United Technologies Corp.*, 337 F.3d 271, 277–78 (2d Cir. 2003) ("Given that the definition of disability used by the ADA essentially pre-dates the definition of physical disability promulgated by the Connecticut General Assembly for [CFEPA], the General Assembly, had it wished to do so, could have adopted the ADA definition. The fact that the General Assembly chose not to adopt that language readily supports an inference that the Connecticut legislature appreciated the scope of the ADA definition and intended the CFEPA definition to be different."); *Wallace* v. *Caring Solutions, LLC*, 213 Conn. App. 605, 625–26, 278 A.3d 586 (2022) (legislature's failure to alter causation standard for CFEPA discrimination claims to comport with standards employed at federal level, despite having amended CFEPA numerous times, was indicative of its intention to maintain existing standard). We conclude, for these reasons, that § 46a-60 (b) (1), by its plain and unambiguous terms, does not prohibit disability discrimination by association.

The plaintiff argues, nonetheless, that we should construe § 46a-60 (b) (1) "to include the protection of employees from associational disability discrimination even though such protection is not explicitly stated" therein. He relies primarily on "CFEPA's remedial purpose" and argues that the "broad interpretation" he advocates furthers the legislature's intent to "stamp out

employment discrimination in all of its forms." He also places great emphasis on our Supreme Court's decision in *Desrosiers* v. *Diageo North America, Inc.*, supra, 314 Conn. 773, the Massachusetts Supreme Judicial Court's decision in *Flagg* v. *AliMed, Inc.*, 466 Mass. 23, 992 N.E.2d 354 (2013), and cases construing Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e et seq. We are not persuaded by the plaintiff's arguments.

With respect to the plaintiff's reliance on CFEPA's remedial purpose, "[i]t is axiomatic that remedial statutes should be construed liberally in favor of those whom the law is intended to protect . . . ." (Internal quotation marks omitted.) *Hernandez* v. *Apple Auto Wholesalers of Waterbury, LLC*, 338 Conn. 803, 815, 259 A.3d 1157 (2021). To this end, we acknowledge that CFEPA generally reflects this state's laudable public policy to eliminate employment related discrimination. See, e.g., *McWeeny* v. *Hartford*, supra, 287 Conn. 70; *Thibodeau* v. *Design Group One Architects, LLC*, 260 Conn. 691, 706, 802 A.2d 731 (2002). Even so, "[a]lthough we agree that the important and salutary public policy expressed in the antidiscrimination provisions of [§ 46a-60 (b) (1)] cannot be overstated . . . the plain language of [§ 46a-60 (b) (1)] limiting its protections to [the class of persons identified therein] is, itself, an expression of public policy that cannot be separated from the policy reflected in the [statute's] ban on discriminatory employment practices." (Citation omitted; internal quotation marks omitted.) *McWeeny* v. *Hartford*, supra, 70. "[O]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . [W]e are not free to accomplish a result that is contrary to [that] intent . . . ." (Citation omitted; internal quotation marks omitted.) *Commission on Human Rights & Opportunities* v. *Echo Hose Ambulance*, 322 Conn. 154, 165, 140 A.3d 190 (2016).

Construing § 46a-60 (b) (1) as the plaintiff proposes would contravene, not further, the legislature's clearly expressed intent. Although CFEPA is remedial in nature and, therefore, must be interpreted, whenever reasonably possible, to effectuate the beneficent purpose of eliminating employment related discrimination, that principle of statutory construction does not authorize this court to ignore the plain language of § 46a-60 (b) (1) and the limits that the language places on achieving this purpose. See *Doe* v. *Stamford*, 241 Conn. 692, 697, 699 A.2d 52 (1997) ("[a]lthough the parties . . . called . . . attention to the public policy implication of [the] case, the issue presented [was], at bottom, a matter of statutory construction"). As we have explained, § 46a-60 (b) (1) clearly and unambiguously limits the class of individuals CFEPA protects from employment discrimination based upon a physical disability to those who are, themselves, physically disabled. It is the province of the legislature, not this court, to determine whether to expand this class by adding disability discrimination by association to the list of practices § 46a-60 (b) (1) prohibits. See *Stratford Police Dept.* v. *Board of Firearms Permit Examiners*, 343 Conn. 62, 73, 272 A.3d 639 (2022) ("it is well settled that [this court is] not permitted to supply statutory language that the legislature may have chosen to omit" (internal quotation marks omitted)).

The case law upon which the plaintiff relies to support his argument that we should read protection against disability discrimination by association into CFEPA also is unpersuasive. Turning first to our Supreme Court's opinion in *Desrosiers* v. *Diageo North America, Inc.*, supra, 314 Conn. 773, the plaintiff argues that the court in that case broadly construed CFEPA to protect individuals who were *perceived* as disabled even though "such protection [was] not explicitly stated" and that we should apply the same logic "in

order to permit [his] claim of disability discrimination by association." The plaintiff's reliance on *Desrosiers* is misplaced.

In *Desrosiers*, the plaintiff's employer terminated her employment the day after she informed her manager that she would need time off to have surgery to address a tumor on her shoulder. *Desrosiers* v. *Diageo North America, Inc.*, supra, 314 Conn. 777. She brought an action in which she alleged, among other things, that her employer had discriminated against her on the basis of her "physical disability and/or her perceived disability." Id., 778. The trial court granted the employer's motion for summary judgment to the extent the plaintiff alleged a cause of action based on a perceived disability because "a cause of action based on a perceived disability is not a legally recognized action in Connecticut." (Internal quotation marks omitted.) Id. The disputed issue on appeal was whether CFEPA's prohibition against discrimination based on an "individual's . . . physical disability" pertained only to individuals who, in fact, had physical disabilities or whether those individuals who were merely perceived by their employers as being physically disabled were protected as well. Id., 775.

After examining the pertinent provisions of § 46a-60, the court in *Desrosiers* concluded that the statute's plain text did "not protect individuals who are perceived to be physically disabled from employment discrimination . . . ." Id., 784. The court explained, however, that a literal application of that language to the facts in *Desrosiers* would lead to bizarre results. Id., 785–86. The court reasoned that, "under the plain [statutory] language . . . if an employee has a chronic disease, the employer may not discharge the employee on that basis. If, however, the employee is undergoing testing that leads his employer to believe that he has a chronic disease, the literal terms of [the statute] do not protect

the employee from discharge on that basis, despite the fact that the employer's action, in both cases, was premised on the same discriminatory purpose. Similarly . . . an employee who is discharged because his employer believes a rumor that he has a chronic impairment can pursue a cause of action, but only if the rumor is true and the employee actually *has* the chronic impairment. If the rumor is false, and the employee does not have the impairment, but is merely believed to have the impairment, the employee has no recourse, despite the fact that in either case the employer's action was based on the same discriminatory motive." (Emphasis in original.) Id., 785. In other words, it should not matter whether the physical disability was perceived or actual because either way the employer's actions would be predicated on the "individual's . . . physical disability." A literal application of the statutory language to the facts in *Desrosiers*, however, would not have prohibited all discriminatory actions based upon an "individual's . . . physical disability," and thus some members of the protected class would have been left vulnerable to discrimination and without recourse.

Because that interpretation would have led to an absurd and unworkable result, the court considered extratextual evidence to assist in its construction of the statute and, after doing so, held that CFEPA also "protects individuals who are perceived to be physically disabled from employment discrimination . . . ." *Desrosiers* v. *Diageo North America, Inc.*, supra, 314 Conn. 781. The court did not broadly construe CFEPA's plain and unambiguous language to add a new protected class of persons that the legislature did not identify. Rather, it interpreted CFEPA in accordance with the well settled rules of statutory construction to give effect to the "legislature's clear statement that discrimination based on [an individual's] physical disability is prohibited" and concluded that it applied to all the members of that

protected class. (Internal quotation marks omitted.) Id., 785–86.

In the present case, the application of the plain and unambiguous language of § 46a-60 (b) (1) does not lead to bizarre or unreasonable results and the plaintiff does not argue otherwise. Applied literally, § 46a-60 (b) (1) allows employees to bring discrimination claims based on their own protected conditions, including, but not limited to, their own physical disabilities. As applied to the facts of this case, and unlike the situation in *Desrosiers*, the statute as literally construed reaches the entire protected class of employees who have physical disabilities. Although the plaintiff is an employee, he does not have a physical disability. Likewise, although the plaintiff's son has a physical disability, he is not an employee or a prospective employee. Thus, neither is a member of the protected class and, consequently, *Desrosiers* provides no support for the position advocated by the plaintiff.

Nor does *Flagg* v. *AliMed, Inc.*, supra, 466 Mass. 23, advance the plaintiff's cause. In *Flagg*, the Massachusetts Supreme Judicial Court held that claims for associational discrimination based on a handicap fit within the scope of the Commonwealth's antidiscrimination statutory scheme even though the applicable statutory provision, Mass. Gen. Laws c. 151B, § 4 (16) (2012), did not expressly identify such claims as a form of unlawful employment discrimination. Id., 24. In reaching this conclusion, the court recited the relevant statutory language[4] and "[t]he general and familiar rule . . . that a

---

[4] The court in *Flagg* was interpreting the following pertinent language from Mass. Gen. Laws c. 151B, § 4 (16) (2012), which makes it unlawful "[f]or any employer, personally or through an agent, to dismiss from employment or refuse to hire, rehire or advance in employment or otherwise discriminate against, *because of his handicap, any person alleging to be a qualified handicapped person*, capable of performing the essential functions of the position involved with reasonable accommodation, unless the employer can demonstrate that the accommodation required to be made to the physical or mental limitations of the person would impose an undue hardship to the

statute must be interpreted according to the intent of the [l]egislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished." (Internal quotation marks omitted.) Id., 28. The court then looked to the purpose and objectives of the statute before "return[ing] to the language of" the statute; id., 31; and evaluating that language "in the context of the overarching purpose of the statute itself." Id., 28. The court did not assess, in the first instance, the text of the statute to ascertain whether that text was plain and unambiguous and, if so, whether its application yielded absurd or unworkable results, before turning to extratextual evidence, as we are required to do. See, e.g., *Desrosiers* v. *Diageo North America, Inc.*, supra, 314 Conn. 785; see also *State* v. *Ruocco*, 151 Conn. App. 732, 753–54, 95 A.3d 573 (2014) ("Section 1-2z directs us to determine the meaning from the text of the statute itself and its relationship to other statutes. If, after doing so, the term is plain and unambiguous then our inquiry ends and extratextual evidence shall not be considered."), aff'd, 322 Conn. 796, 144 A.3d 354 (2016); *Matamoros* v. *Broward Sheriff's Office*, 2 F.4th 1329, 1332–33 (11th Cir. 2021) (plain language of Florida Civil Rights Act of 1992, Fla. Stat. § 760.01 et seq., does not prohibit discrimination based on plaintiff's association with disabled individual); *Barnett* v. *Central Kentucky Hauling, LLC*, 617 S.W.3d 339, 341–42 (Ky. 2021) (plain language of Kentucky Civil Rights Act, Ky. Rev. Stat. Ann. § 344.010 et seq., does not create cause of action for associational discrimination). As set forth herein, the plain text of § 46a-60 (b) (1) and its relationship to other Connecticut statutes provide no indication that CFEPA prohibits

employer's business . . . ." (Emphasis in original; internal quotation marks omitted.) *Flagg* v. *AliMed, Inc.*, supra, 466 Mass. 27–28.

disability discrimination by association. Accordingly, *Flagg* is not persuasive precedent for purposes of our resolution of the present case.

Finally, the plaintiff relies on Title VII[5] and the decisions by courts that, he claims, have interpreted it "to ban [associational] discrimination." Although courts have recognized associational discrimination as a violation of Title VII, the circumstances in which they have done so involve allegations of discrimination due to *the employee's own protected condition*. See, e.g., *Zarda* v. *Altitude Express, Inc.*, 883 F.3d 100, 128 (2d Cir. 2018) (recognizing violation of Title VII for associational discrimination based on sex and holding that "sexual orientation discrimination . . . is based on an employer's opposition to association between particular sexes and thereby discriminates against an employee *based on their own sex*" (emphasis added)), aff'd sub nom. *Bostock* v. *Clayton County*, 590 U.S. 644, 140 S. Ct. 1731, 207 L. Ed. 2d 218 (2020); *Holcomb* v. *Iona College*, 521 F.3d 130, 139 (2d Cir. 2008) ("where an employee is subjected to adverse action because an employer disapproves of interracial association, the employee suffers discrimination because of the employee's *own* race" (emphasis in original)); *Parr* v. *Woodmen of the World Life Ins. Co.*, 791 F.2d 888, 892 (11th Cir. 1986) ("[w]here a plaintiff claims discrimination based upon an interracial marriage or association, he alleges, by definition,

---

[5] "In passing Title VII, Congress made the simple but momentous announcement that sex, race, religion, and national origin are not relevant to the selection, evaluation, or compensation of employees. . . . The text of Title VII provides, in relevant part:

It shall be an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge . . . or otherwise to discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . ." (Citation omitted; internal quotation marks omitted.) *Zarda* v. *Altitude Express, Inc.*, 883 F.3d 100, 111 (2d Cir. 2018), aff'd sub nom. *Bostock v. Clayton County*, 590 U.S. 644, 140 S. Ct. 1731, 207 L. Ed. 2d 218 (2020).

that he has been discriminated against *because of his race*" (emphasis altered)). Here, the plaintiff is not alleging discrimination based upon his own protected condition but, rather, the protected condition of someone else.

For these reasons, we conclude that the court properly granted the defendant's motion to strike because § 46a-60 (b) (1), by its plain and unambiguous terms, does not prohibit disability discrimination by association.

The judgment is affirmed.

In this opinion the other judges concurred.